**UNITED STATES of America, Appellant,**

v.

**Elliott SHARAPAN, Victor Sharapan.**

No. 93–3271.

United States Court of Appeals,
Third Circuit.

Argued Nov. 30, 1993.

Decided Jan. 18, 1994.

Thomas W. Corbett, Jr., U.S. Atty., Bonnie R. Schlueter (argued), Asst. U.S. Atty., Pittsburgh, PA, for appellant.

Charles F. Scarlata (argued), Scarlata & Associates, Pittsburgh, PA, for appellee, Elliott Sharapan.

Before: SCIRICA and ALITO, Circuit Judges, and POLLAK, District Judge.*

## OPINION OF THE COURT

ALITO, Circuit Judge:

In this appeal by the government, we must decide whether the sentence imposed by the district court on the appellee, Elliott Sharapan, is permitted by the Sentencing Reform Act and the Sentencing Guidelines. While apparently accepting that the Guidelines prescribed a sentence of imprisonment, the district court granted a downward departure and imposed a sentence of five years' probation. The district court granted this departure because of its concern that incarceration of the appellee would cause his business to fail and thereby result in the loss of approximately 30 jobs and other economic harm to the community. We hold that this departure is inconsistent with U.S.S.G. § 5H1.2, which provides that departures based on a defendant's "vocational skills" are generally not permitted. We therefore vacate the sentence imposed by the district court and remand for resentencing.

## I.

In September 1992, a federal grand jury returned a 30–count indictment against the appellee and his brother, Victor Sharapan. Both brothers were charged with 17 counts of mail fraud, in violation of 18 U.S.C. §§ 1341 and 2. These counts charged that the appellee, the president and sole stockholder of Ralph's Discount City, Inc. ("Ralph's"), and his brother, the president of Save Rite Stores, Inc., had participated in a fraudulent scheme involving the redemption of coupons that are issued by manufacturers and distributors of consumer goods and that entitle consumers to discounts when they purchase certain items. The indictment charged that the appellee had, among other things, fraudulently submitted and received payments for large quantities of coupons that had not been redeemed in connection with consumer purchases. Under this scheme,

the indictment alleged, Ralph's had received approximately $2,000,000 and Save Rite Stores, Inc., had received approximately $200,000. In addition to the mail fraud charges, the appellee was indicted for three counts of filing false corporate income tax returns on behalf of Ralph's, in violation of 26 U.S.C. § 7206(1), and with 10 counts of structuring currency transactions in order to evade reporting requirements, in violation of 31 U.S.C. §§ 5324(a)(3) and 5322(b) and 18 U.S.C. § 2.

In January 1993, the appellee pleaded guilty to two counts of mail fraud and two counts of filing false corporate income tax returns, and a presentence report was subsequently prepared. The report concluded that his mail fraud offenses had caused a loss of more than $2,000,000 and that his tax offenses had caused a tax loss of about $240,000. Based on these determinations, the report concluded that his total offense level was 20. Finding that his criminal history category was I, the report concluded that his Guidelines sentencing range was 33 to 41 months' imprisonment and a fine of $7,500 to $75,000. In addition, the report noted that restitution could be ordered pursuant to 18 U.S.C. § 3663. The report found no factors that might warrant a sentencing departure.

On the day when sentencing was originally scheduled, the district court judge stated that he was considering the imposition of a sentence of probation because the appellee's incarceration would "perhaps inevitabl[y]" result in the demise of Ralph's and the loss of jobs for that business's 30 employees. The prosecutor responded that he had not previously been advised of the possibility of a departure on that ground, and he therefore requested the opportunity to respond. The district court then put off the sentencing for one week.

Following this proceeding, the government submitted a written objection to the proposed downward departure. The government contended that the potential loss of jobs by Ralph's employees was not an appropriate basis for departure, and the govern-

---

* The Honorable Louis H. Pollak, Senior United States District Court Judge for the Eastern District of Pennsylvania, sitting by designation.

ment noted that downward departures based on similar grounds had been rejected in *United States v. Mogel*, 956 F.2d 1555 (11th Cir.), *cert. denied*, — U.S. ——, 113 S.Ct. 167, 121 L.Ed.2d 115 (1992), and *United States v. Rutana*, 932 F.2d 1155 (6th Cir.), *cert. denied*, — U.S. ——, 112 S.Ct. 300, 116 L.Ed.2d 243 (1991).

On the new date scheduled for sentencing, the district court judge first heard arguments from counsel in chambers. The prosecutor requested the opportunity to present evidence to show that there was "no real indication" that Ralph's would fail if the appellee was incarcerated. App. 119. The prosecutor stated that his evidence would establish that the appellee's role in running the business had been less significant than previously suggested and that the appellee had made arrangements for another person, subsequently identified as the previous owner of Ralph's, to manage the business in his absence. *See id.* at 119, 138. Defense counsel responded that his investigator had determined that the business could not survive without the appellee and that a bank with an outstanding loan to Ralph's would "likely pull the loan" if the appellee were incarcerated. *Id.* at 120–21. The prosecutor then responded that the bank had advised its investigator that, before making a decision about the loan, it would first consider the arrangements that had been made for the management of the business in the appellee's absence. *Id.* at 121–22.

After this exchange, the district court judge provided a lengthy oral explanation of his sentencing decision. The judge began by noting that, after reading the presentence report, he had "concluded that this business probably could not survive the Guideline dictated sentence." *Id.* at 122. The judge expressed concern about putting Ralph's 30 employees out of work and about the broader effects on the community. He stated that he thought it made "more sense" to require the appellee "to work in his business" and pay restitution to his victims. *Id.* at 125. Disagreeing with the decisions in *Rutana* and *Mogel*, the judge stated that he did not see any indication that the Sentencing Commission had considered the impact of a business-person's incarceration on the business's employees.

In accordance with these views, the judge imposed a sentence of five years' probation on all of the counts to which the appellee had pled guilty. The judge also required the appellee to "operate his business conscientiously"; to pay $5,000 restitution per month for 60 months; to be subject to house arrest from 10:00 p.m. to 6:00 a.m. each day for the first two years of probation, except in case of illness or emergency; and to perform eight hours of community service per week during the second year of probation. The judge imposed a $50 special assessment on each count but no fine. The government then took this appeal.

## II.

The Sentencing Reform Act generally requires a district court judge to impose a sentence within the range set out in the Sentencing Guidelines. 18 U.S.C. § 3553(b). The Act permits a sentence outside the Guidelines range, however, if "the court finds that there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines that should result in a sentence different from that described." *Id.* Therefore, in determining whether a sentencing judge was permitted to grant a departure based on a particular circumstance, we must often decide whether the Sentencing Commission adequately considered that circumstance in framing the applicable Guidelines provisions.

There are some factors, however, that the Sentencing Reform Act expressly required the Commission to consider. In 28 U.S.C. § 994(d)(3), the Commission was directed to consider whether any of 11 characteristics of offenders—including, most importantly for present purposes, an offender's "vocational skills"—"have any relevance to the nature, extent, place of service, or other incidents of an appropriate sentence" and to take them "into account only to the extent that they do have relevance." Moreover, in 28 U.S.C. § 994(e) the Commission was told to "assure that the guidelines and the policy statements

in recommending a term of imprisonment or length of a term of imprisonment, reflect *the general inappropriateness of considering the* education, *vocational skills,* employment record, family ties and responsibilities and community ties *of the defendant*" (emphasis added).

Pursuant to its statutory mandate, the Commission has issued policy statements setting out its views about the propriety of departures based on the offender characteristics listed in the Act and certain others. *See* U.S.S.G. §§ 5H1.1–5H1.12. We have frequently relied on these policy statements in determining whether particular departures were permitted. *See, e.g., United States v. Gaskill,* 991 F.2d 82, 84–85 (3d Cir.1993); *United States v. Seligsohn,* 981 F.2d 1418, 1428–29 (3d Cir.1992); *United States v. Higgins,* 967 F.2d 841, 845–46 (3d Cir.1992); *United States v. Shoupe,* 929 F.2d 116, 120–21 (3d Cir.), *cert. denied,* —— U.S. ——, 112 S.Ct. 382, 116 L.Ed.2d 333 (1991); *United States v. Pharr,* 916 F.2d 129, 133 (3d Cir. 1990), *cert. denied,* —— U.S. ——, 111 S.Ct. 2274, 114 L.Ed.2d 725 (1991); *United States v. Rosen,* 896 F.2d 789, 792 (3d Cir.1990). *See also Williams v. United States,* —— U.S. ——, ——, 112 S.Ct. 1112, 1119, 117 L.Ed.2d 341 (1992).

■ One of these policy statements provides in pertinent part as follows:

Education and *vocational skills are not ordinarily relevant in determining whether a sentence should be outside the applicable guideline range....*

Education and vocational skills may be relevant in determining the conditions of probation or supervised release for rehabilitative purposes, for public protection by restricting activities that allow for the utilization of a certain skill, or in determining the appropriate type of community service.

U.S.S.G. § 5H1.2 (emphasis added). This provision plainly means that, in ordinary circumstances, a sentencing judge may not grant a downward departure [1] based on a defendant's possession of "vocational skills";

by implication, this provision also means that, in extraordinary circumstances, a sentencing judge may grant such a departure. *See, e.g., United States v. Gaskill,* 991 F.2d at 85 (holding that analogous provision "does not prohibit departures but restricts them to cases where the circumstances are extraordinary.").

■ Lacking any evidence of a contrary intent, we assume that the phrase "vocational skills" was intended to have its commonly understood meaning. The term "skill" is defined as "the ability, coming from one's knowledge, practice, aptitude, etc., to do something well." *The Random House Dictionary of the English Language* 1791 (2d ed. 1987). The term "vocation" is defined as "a particular occupation, business, or profession; calling." *Id.* at 2129. Thus, the phrase "vocational skill" means an "ability, coming from one's knowledge, practice, aptitude," to do well something pertaining to or connected with "a particular occupation, business, or profession."

■ Although the Sentencing Guidelines do not explain why a sentencing court may grant a downward departure based on a defendant's possession of vocational skills only in extraordinary circumstances, we presume that the Sentencing Commission concluded that the goals of punishment should generally take precedence over the objective of protecting society from the harm that it might suffer if, as a result of a defendant's incarceration, it were deprived of the work-related contribution that the defendant could have otherwise made. At the same time, however, the Commission apparently felt that a downward departure could be justified in extraordinary circumstances, such as where incarceration of the defendant would deprive society of a work-related contribution of extraordinary value.

In light of this understanding of U.S.S.G. § 5H1.2 and the principle on which it is based, we hold that the district court's downward departure in this case was not permissi-

---

1. By its plain language, this provision applies equally to downward and upward departures, but in this case we need not, and thus do not, consider the circumstances, if any, in which an upward departure based on a defendant's possession or lack of possession of "vocational skills" might be justified.

ble. The district court granted that departure because it felt that Ralph's would likely fail if the appellee were not free to run it. In other words, the district court granted the downward departure because of the appellee's supposedly unique ability to keep Ralph's afloat. This ability itself may qualify as a "vocational skill" under the definition set out above. Moreover, even if the ability to keep Ralph's in operation is too narrow and specific to qualify as a "vocational skill," this ability may well be based on a "vocational skill," such as general managerial ability. Finally, even if the district court believed that the appellee was uniquely able to run Ralph's owing to some personal trait, such as charisma, reputation, or personal contacts, that might not be considered a "skill" in the strictest sense of the term, a downward departure based on the possession of such a trait would run afoul of the principle underlying U.S.S.G. § 5H1.2, *i.e.*, that a sentencing judge may grant a downward departure based on a defendant's ability to make a work-related contribution to society only in extraordinary circumstances.

Here, no such extraordinary circumstances exist. In the first place, we see nothing extraordinary in the fact that the imprisonment of Ralph's principal for mail fraud and filing false corporate tax returns may cause harm to the business and its employees. The same is presumably true in a great many cases in which the principal of a small business is jailed for comparable offenses, and accordingly, we doubt whether these consequences are sufficiently unusual to provide a proper basis for a sentencing departure. *See United States v. Rutana*, 932 F.2d at 1158.

Furthermore, we are not convinced that the consequences of imprisoning the appellee are of sufficient economic importance to society to justify a departure. Although we question whether the record in this case is adequate to support the district court's finding that Ralph's is likely to fail if the appellee is incarcerated, we will assume for the sake of argument that that result would ensue. We nevertheless see no basis for concluding that this failure would cause any extraordinary harm to society as a whole. Assuming that all other economic conditions remain constant, the failure of Ralph's, while presumably producing hardship for some of those closely connected with that business, might well produce corresponding benefit for Ralph's existing or potential competitors and for those closely connected with those enterprises. Thus, we do not think that a downward departure in this case can be justified based on the effects that incarcerating the appellee would have on society as a whole.

This conclusion is consistent with the decisions of other courts of appeals. In *United States v. Rutana, supra*, the defendant pled guilty to criminal violations of the Clean Water Act. The Guidelines called for a term of imprisonment of 27 to 33 months, but the sentencing judge granted a downward departure and imposed a sentence of probation, relying in part on the fact that a business owned by the defendant might fail if he were incarcerated. *See* 932 F.2d at 1158. The Sixth Circuit reversed, stating that "the circumstance expressly relied upon by the district court does not make this case sufficiently unusual to warrant a downward departure from the guidelines." *Id.* The court elaborated:

> [E]ven assuming that Rutana's imprisonment would lead to the failure of his business and the loss of his employees' jobs, this fact does not distinguish Rutana from other similar offenders. "[T]here must be something 'special' about a given offender, or the accouterments of the crime committed, which distinguishes the case from the mine-run for that offense." ... We find nothing special about an industrial polluter who also happens to be an employer. The very nature of the crime dictates that many defendants will likely be employers, whose imprisonment may potentially impose hardship upon their employees and families. In sum, Rutana's status as a business owner simply does not distinguish his case from the "mine-run" of cases involving the discharge of prohibited effluents, and is not a legally sufficient basis for downward departure.

*Id.*

In *United States v. Mogel, supra*, the Guidelines called for the defendant to serve a sentence of 51 to 63 months' imprisonment,

but the district court granted a downward departure and imposed a sentence of probation based in part on the fact that the defendant had " 'a business that could go under if [she is] not there to take care of it.' " 956 F.2d at 1557 (bracket in original). The Eleventh Circuit reversed, holding that a departure based on business ownership was not warranted. We agree with the essential reasoning in these cases.

### III.

In sum, we hold that the downward departure granted by the district court in this case cannot be sustained. Under the Sentencing Guidelines, departures play a vital role, as our decisions have recognized. *See, e.g., United States v. Gaskill,* 991 F.2d at 86; *United States v. Lieberman,* 971 F.2d 989, 999 n. 10 (3d Cir.1992). The Sentencing Reform Act and the Guidelines, however, place restrictions on the use of departures, and in this case those restrictions dictate our decision. The judgment of sentence imposed by the district court is therefore vacated, and the case is remanded for resentencing.[2]

---

**2.** We are vacating the entire sentence imposed on the defendant. Therefore, the district court on remand is free, within the constraints imposed by the applicable statutes and Guideline provisions, to fashion a new sentencing package that is appropriate for this case. We express no view regarding the calculation of the appellee's Guidelines range with respect to imprisonment or fine. We note, however, that both before us and before the district court, the government has suggested that the order of restitution imposed by the district court may be inconsistent with our decision in *United States v. Seligsohn,* 981 F.2d at 1421–22. On resentencing the appellee, the district court should ensure that any order of restitution complies with that precedent.