UNITED STATES of America, Appellee,

v.

Anthony G. OLBRES and Shirley
A. Olbres, Appellants.

Nos. 96–1021, 96–1022.

United States Court of Appeals,
First Circuit.

Heard Aug. 1, 1996.

Decided Nov. 1, 1996.

Gregory G. Katsas, with whom John B.
Nalbandian, Jones, Day, Reavis & Pogue,
Washington, DC, Scott P. Lopez, Terry Phil-

ip Segal, Segal & Feinberg, Boston, MA, Steven M. Gordon, and Shaheen & Gordon, Concord, NH, were on brief, for appellants.

Karen Quesnel, Attorney, Tax Division, Department of Justice, with whom Loretta C. Argrett, Assistant Attorney General, and Robert E. Lindsay and Alan Hechtkopf, Attorneys, Tax Division, Department of Justice, Washington, DC, were on brief, for appellee.

Before SELYA, CYR and LYNCH, Circuit Judges.

LYNCH, Circuit Judge.

This tax evasion case raises two sentencing issues, one of import to tax cases and one of larger import. We hold that a sentence in a tax evasion case must be predicated on findings as to amounts that the government has proven were willfully evaded and that it is unlikely the requisite findings were made here. We also hold that there is no categorical imperative prohibiting the very consideration of whether a case is so unusual as to warrant a downward departure based on the loss of jobs to innocent employees occasioned by the imprisonment of the defendant owner of a small business. We reject the argument that the United States Sentencing Commission's comment discouraging departures based on the "vocational skills" of the defendant categorically prohibits consideration of such job loss to third parties. Accordingly, we vacate defendants' sentences and remand.

I

Anthony and Shirley Olbres, husband and wife, run a business, Design Consultants ("DC"), which creates exhibit booths for trade shows. Design Consultants currently employs twelve people in addition to Anthony Olbres, who is president of the company, and Shirley Olbres, who serves as DC's part-time bookkeeper. In 1987, Mr. and Mrs. Olbres had a total income of $837,480. In June 1987, they purchased a Rolls Royce Corniche convertible for $158,000. They drove the Rolls to a local restaurant in Exeter, New Hampshire. A passing IRS employee saw the luxury car parked outside of the restaurant. His curiosity engaged, he wrote down the license plate number with the intention of identifying the car's owner and examining his or her tax returns. The IRS employee's curiosity led to a 1989 audit of the Olbres' 1987 joint tax returns and eventually resulted in a criminal investigation. The investigation led the government to conclude that Mr. and Mrs. Olbres had committed criminal tax evasion.

Mr. and Mrs. Olbres were indicted on three counts of criminal tax evasion related to the income tax returns they filed for the years 1986, 1987, and 1988. See 26 U.S.C. § 7201. The returns understated the couple's taxable income for those years by approximately $153,000, $749,000, and $175,000, respectively. For 1987, the year with the bulk of the unreported income, Mr. and Mrs. Olbres failed to report income from three sources: 1) payments, totaling $630,000, from business customers that were deposited directly into a business savings account and not recorded in the cash receipts journal provided to the Olbres' accountant; 2) rental income, totaling $22,000, from various properties the couple owned; and 3) rebates, totaling $97,000, paid by shipping companies utilized by DC. Mr. and Mrs. Olbres conceded all the understatements but defended on the basis that none were willful. The couple insisted that they had relied on their accountant, who had prepared their returns since 1977. That accountant died before the trial. The couple attributed other errors, including the failure to report the shipping rebates, to Mrs. Olbres, who was depicted as a well-meaning but untrained bookkeeper.

The jury acquitted Mr. and Mrs. Olbres on the charges relating to the 1986 and 1988 returns and convicted on the charge related to the 1987 return. The jury verdict was general; the district judge instructed the jury that it could convict on a count if it found that Mr. and Mrs. Olbres had willfully attempted to evade a "substantial" amount of taxes for the relevant year. There was no specific jury finding as to the amounts willfully evaded, or as to whether the willful evasion encompassed some or all of the categories of income involved.

The district court granted the Olbres' motion for judgment of acquittal on the conviction relating to the 1987 tax return on the

basis that the government had failed to prove willfulness beyond a reasonable doubt. *United States v. Olbres,* 881 F.Supp. 703, 706 (D.N.H.1994). The government appealed, and this court reversed, holding that there was evidence of willfulness sufficient to uphold the conviction. *United States v. Olbres,* 61 F.3d 967, 970–73 (1st Cir.), *cert. denied,* —— U.S. ——, 116 S.Ct. 522, 133 L.Ed.2d 430 (1995). This court did not parse the evidence as to the specific amounts willfully underreported for the year 1987. *See id.*

On remand, the district court determined that the tax loss caused by Mr. and Mrs. Olbres totalled $632,158, which, according to the Sentencing Guidelines' Tax Table, places the Olbres' base offense level at 15. *See* U.S.S.G. § 2T4.1. The $632,158 amount included the $470,236 tax loss from 1987 as well as the tax losses from 1986 and 1988, despite the defendants' challenge to the inclusion of certain amounts from 1987 and of the entire 1986 and 1988 amounts.

The district court judge sentenced Mr. and Mrs. Olbres to 18 months in prison, the lowest possible sentence within the level 15 sentencing range for their Criminal History Category of I. That sentence is predicated upon the willfulness requirement having been met for the entire sum underreported for 1987. It is also predicated on the entire sums underreported for 1986 and 1988, as the court felt it was required to consider those amounts as relevant conduct, despite the acquittals. Stating that it was legally required to do so, the court rejected Mr. and Mrs. Olbres' argument that there should be a downward departure from the sentence because sending them to prison would mean the demise of their small business and loss of employment for a dozen innocent employees. It is from these determinations that Mr. and Mrs. Olbres appeal.

Three issues are argued. Mr. and Mrs. Olbres argue that the district court erred in failing to determine whether they willfully evaded all of the taxes on which their sentence was based. They also argue that the consideration of the acquitted conduct stemming from the 1986 and 1988 tax years violated the Sentencing Reform Act and the Double Jeopardy and Due Process Clauses of

the Constitution. Finally, Mr. and Mrs. Olbres argue that the district court erred as a matter of law in adopting a per se rule that a trial court may never consider a downward departure to prevent termination of an ongoing business enterprise and the loss of employment to innocent persons. We vacate the sentence and remand for further proceedings on the first and third grounds and do not reach the Olbres' acquitted conduct argument.

## II

■ The United States and defendants agree on this appeal that for sentencing purposes the trial judge was required by Rule 32(c)(1), Fed.R.Crim.P., to find that Mr. and Mrs. Olbres willfully attempted to evade all of the taxes used in determining their base offense level. The dispute is over whether the court adequately, or ever, made such findings. The government contends that although the trial court made no specific findings, the trial judge, by expressly adopting the findings of the Presentence Investigation Report ("PSR"), implicitly found that Mr. and Mrs. Olbres had willfully evaded taxes on income of approximately $1.1 million, encompassing the tax years 1986, 1987, and 1988. Mr. and Mrs. Olbres contend that the trial court improperly declined to make such findings and instead erroneously assumed that the general jury verdict and this court's opinion in its sufficiency review established that the entire sum of $1.1 million was willfully evaded. Because the record is unclear as to what the district court actually found, and in light of our disposition of the downward departure issue, we vacate the Olbres' sentences and remand for further proceedings. *See United States v. Garafano,* 36 F.3d 133, 135 (1st Cir.1994).

In order to determine the base offense level under the Sentencing Guideline for tax evasion, the sentencing court must determine the amount of "tax loss" to the government. U.S.S.G. § 2T1.1(a)(1987). In the pertinent 1987 Guidelines Manual, "tax loss" is defined as "the total amount of tax that the taxpayer evaded or attempted to evade, including interest to the date of filing of an indictment." *Id.*

The primary difficulty presented by this case is that the jury, in order to convict, was not required to find the total amount of the tax that the taxpayers evaded or attempted to evade. Indeed, the jury was instructed that "[t]he government does not have to prove the exact amount the defendants owed, nor does the government have to prove that all the tax charged in the indictment was evaded." Thus, the sentencing judge is required to make a determination which is not necessarily made by the jury and, in this case, was not made.

Further enlarging the sentencing judge's task, the Guidelines also state that "[w]hen more than one year is involved, the tax losses are to be added." U.S.S.G. § 2T1.1. The Guidelines Commentary explains this instruction as follows:

> While the definition of tax loss corresponds to "criminal deficiency," its amount is to be determined by the same rules applicable in determining any other sentencing factor. In accordance with the "relevant conduct" approach adopted by the guidelines, tax losses resulting from more than one year are to be added regardless of whether the defendant is convicted of multiple counts.

U.S.S.G. Pt. T, comment. 1 (1987).

It is against this background that the district court stated the task it thought it faced in light of the government's position at that time:

> With regard to the amounts evaded, I find that the proper means of calculating the amount of tax loss or the amount evaded under the Sentencing Guidelines requires the Court to look to the amounts not included as income on the return that should have been included as income and then to compute the tax based upon that income plus interest based on the statutory rate from the date of return to the date of indictment.

This is a correct statement of the first step of the analysis. The next step, as the government now concedes, is to identify the amount of taxes willfully evaded. We are left with uncertainty as to whether that step was taken. In determining what the district court did and did not do at sentencing, "[w]e are guided ... by the record—a record that flavors the judge's words and concomitantly, offers insights into his thinking." *United States v. Tavano*, 12 F.3d 301, 304 (1st Cir. 1993).

In the court's most express statement of findings, the judge stated that he adopted the findings and recommendations set forth in the PSR. The court then held that Mr. and Mrs. Olbres could be sentenced for all "amounts not included as income that should have been included as income." Other than the adoption of the PSR's findings, the judge made no explicit finding regarding the willfulness of evasion on specific amounts.

In many instances, a general statement that the judge has adopted all the factual statements contained in the PSR satisfies the requirements of Rule 32(c), Fed.R.Crim.P. *United States v. Skrodzki*, 9 F.3d 198, 202 n. 7 (1st Cir.1993) (express adoption of PSR defeats Rule 32 challenge); *United States v. Barnett*, 989 F.2d 546, 551 n. 5 (1st Cir.) (checking a box on judgment form indicating that court adopted all findings from PSR constituted specific finding as to the quantity of drugs for which defendants were held responsible), *cert. denied*, 510 U.S. 850, 114 S.Ct. 148, 149, 126 L.Ed.2d 110 (1993); *United States v. Wells Metal Finishing, Inc.*, 922 F.2d 54, 58 (1st Cir.1991) (judge briefly explained sentence at hearing and then completed memorandum indicating that he adopted all factual statements in PSR, noting that one fact had been disputed). Here, however, because the PSR did not resolve all of the disputed factual issues, simple reliance on it is not enough.[1]

---

**1.** This Circuit has also repeatedly held that an implicit resolution of disputed facts is sufficient "when the court's statements and the sentence imposed showed that the facts were decided in a particular way." *United States v. Van*, 87 F.3d 1, 3 (1st Cir.1996)(citing cases). "As a general rule, a trial court lawfully may make implicit findings with regard to sentencing matters, in-corporating by reference suitably detailed suggestions limned in the PSI Report or advanced by a party." *Tavano*, 12 F.3d at 307; *see also United States v. Ovalle–Marquez*, 36 F.3d 212, 227–28 (1st Cir.1994) (finding that trial court's statement that offense level was "based ... on the amount of cocaine involved in the offense" showed that the court adopted the PSR's recom-

The original PSR made no reference to willfulness and did not consider the defendants' acquitted conduct. After a government objection, the PSR was amended to include the tax loss amounts attributed to the acquitted conduct. The PSR addendum noted that, in the district court's Order for Acquittal on the 1987 charge, the judge conceded that a different result would obtain under the civil preponderance standard. *See Olbres*, 881 F.Supp. at 717. The PSR addendum concluded:

> Although the Court's remarks only addressed [1987], there is little difference between the evidence submitted as to the acquitted conduct.... The question regarding their intent is the same, regardless of whether one is focusing on [1987] or the acquitted conduct.

This reference back to the district court's order is ineffective; whether defendants willfully evaded all, or specific portions of, the tax on their 1987 unreported income is not clearly established in that order or in any other statement made by the district court. As defense counsel points out, a willfulness finding for each of the disputed amounts stemming from factually distinct sources for each year in question (as to each of which different lack-of-willfulness arguments are made) is necessary here in order to determine the correct base offense level.[2]

■ Lastly, at sentencing the district court also stated that "willfulness isn't an issue ... as to [19]87" because this court, in its sufficiency opinion, "found a jury could find beyond a reasonable doubt that intent was present." That appellate opinion did not, and could not, make any findings of willful evasion of any specific amount of taxes.[3] Rather, the opinion addressed whether there was legally sufficient evidence to support a verdict that Mr. and Mrs. Olbres

willfully evaded a "substantial" amount of taxes on their 1987 income. *See generally Olbres*, 61 F.3d 967.

As we are unable to settle the issue of willfulness findings based on the jury's general verdict, the trial judge's statements, or the documents he incorporates by reference, *see United States v. Tavares*, 93 F.3d 10, 16 (1st Cir.), *cert. denied*, —— U.S. ——, 117 S.Ct. 373, 136 L.Ed.2d 263 (1996), we leave it to the sentencing court on remand to clarify the specific amounts on which the sentence is based—that is, those amounts as to which payment of taxes was willfully evaded as proven by the government under the preponderance of the evidence standard. *See Garafano*, 36 F.3d at 136. We express no opinion on the appropriateness of the sentence previously imposed. *United States v. Quinones*, 26 F.3d 213, 220 (1st Cir.1994).

## III

■ The defendants appeal the denial of their downward departure motion based on their argument that, if they are imprisoned, their business will fail. Should this occur, the Olbres allege, twelve innocent employees will lose their jobs and suffer severe hardship. The government argues that the Guidelines discuss "vocational skills" as a discouraged factor, not "ordinarily relevant," U.S.S.G. § 5H1.2,[4] and so there is no room for the Olbres' "business failure" argument—an argument that, it contends, is not unusual.

The Olbres' argument is based on the premise that their circumstances take their case out of the "heartland" of the Tax Guidelines. "U.S.S.G. § 5K2.0 allows sentencing courts to depart from the guideline sentencing range in a given case if the court finds aggravating or mitigating circumstances that

---

mendations and implicitly made the necessary findings as to drug quantity), *cert. denied*, —— U.S. ——, 115 S.Ct. 1322, 131 L.Ed.2d 202 (1995). In this case, however, the PSR was not "suitably detailed."

**2.** It is the defendants' position, for example, that the guilty verdict could have been based on as little as $22,000 of unreported rental income in 1987.

**3.** Such factual determinations are either for the jury at trial, *see, e.g., United States v. Gaudin*, —— U.S. ——, —— - ——, 115 S.Ct. 2310, 2313–14, 132 L.Ed.2d 444 (1995), or for the district court at sentencing, *see, e.g.*, 18 U.S.C. § 3742(d).

**4.** Discouraged factors are those "not ordinarily relevant in determining whether a sentence should be outside the guidelines...." U.S.S.G. § 5H1.2.

render the case atypical and take it out of the 'heartland' for which the applicable guideline was designed." *United States v. Carrion–Cruz*, 92 F.3d 5, 6 (1st Cir.1996).

The district court found that if Mr. Olbres was jailed, DC would become defunct and its employees would lose their jobs. The district court ruled, nonetheless, that the Sentencing Commission must have necessarily understood that small businesses will often fail if their principals are incarcerated and that job loss to innocent third parties was therefore "not an unusual situation" under the Guidelines.[5] In so doing, the district court expressly stated it was following the Third Circuit opinion in *United States v. Sharapan*, 13 F.3d 781 (3d Cir.1994), and declined to follow the Second Circuit opinion in *United States v. Milikowsky*, 65 F.3d 4 (2d Cir.1995). The district court understood *Sharapan* to hold that "as a matter of law this is not a basis for departing because the Sentencing Commission has considered the failure of business in constructing heartland guidelines." [6]

Apparently believing that, as a matter of law, business failure and third party job loss, regardless of the magnitude or the severity of the consequences, could not serve as the basis for a downward departure motion, the trial judge stated at the end of the sentencing hearing:

> I also want the record to be clear that if the fact that your business were to fail could serve legally as a basis for departing under the Sentencing Guidelines, then I would depart, and I would depart in a manner sufficient to keep the business from failing and putting those people out of work. But as I say, I can't as I sit here find a principal [sic] basis for departing from the guidelines on those factual assumptions.

In *Sharapan*, the Third Circuit reversed the district court's grant of a downward departure. 13 F.3d at 786. The trial court had found that incarceration of the defendant

would cause his business to fail, resulting in the loss of approximately thirty jobs. *Id.* at 782. It therefore departed from the Guidelines' sentence and sentenced the defendant to probation with conditions. *Id.* at 783. The Third Circuit reversed, holding that the departure was inconsistent with U.S.S.G. § 5H1.2, p.s., which provides that departures based on a defendant's "vocational skills" are not ordinarily appropriate. *Id.* at 784–85. The Third Circuit viewed the Commission's policy statement on "vocational skills" as being based on an underlying "principle ... that a sentencing judge may grant a departure based on a defendant's ability to make a work-related contribution to society only in extraordinary circumstances." *Id.* at 785; *see also United States v. Reilly*, 33 F.3d 1396, 1424 (3d Cir.1994); *United States v. Mogel*, 956 F.2d 1555, 1564 (11th Cir.), *cert. denied*, 506 U.S. 857, 113 S.Ct. 167, 121 L.Ed.2d 115 (1992); *accord United States v. Rutana*, 932 F.2d 1155 (6th Cir.) ("[E]ven assuming that [defendant's] imprisonment would lead to the failure of his business and the loss of his employees' jobs, this fact does not distinguish [defendant] from other offenders."), *cert. denied*, 502 U.S. 907, 112 S.Ct. 300, 116 L.Ed.2d 243 (1991).

In contrast, the Second Circuit in *Milikowsky* affirmed a downward departure taken by the district court because of the effect that Milikowsky's imprisonment would have on his employees. 65 F.3d at 6. The Second Circuit noted "that business ownership alone, or even ownership of a vulnerable small business, does not make downward departure appropriate," *id.* at 9, but held that the district court was nonetheless free to, and indeed required to, consider the possibility of downward or upward departure "when there are compelling considerations that take the case out of the heartland factors upon which the Guidelines rest." *Id.* at 7 (citations omitted).

*Milikowsky* arose under the antitrust guideline, U.S.S.G. § 2R1.1 (1990), and not

---

5. The issue is not moot because the district court granted defendants' motion for bail pending resolution of this appeal. The government agreed that Mr. and Mrs. Olbres do not present a danger to the community or a flight risk.

6. It is not necessary to resolve whether this is a correct reading of *Sharapan*.

the tax guideline involved here. Contrary to the government's argument, this is a distinction without a difference. The Second Circuit considered the same argument the government makes here—that "the Commission could hardly have overlooked the effect that imprisonment of offenders would have on small businesses that are likely to be heavily dependent on those very offenders for their continuing success." *Milikowsky,* 65 F.3d at 8. That may be so, reasoned the Second Circuit, but "in considering, and taking into account, the effect of imprisonment on antitrust offenders' businesses ... the Commission did not thereby take into account the effect such imprisonment would have in 'extraordinary circumstances.'" *Id.*

The structure of analysis we follow in considering sentencing departures is governed by the Supreme Court's decision in *Koon v. United States,* — U.S. —, 116 S.Ct. 2035, 135 L.Ed.2d 392 (1996). The Supreme Court agreed with the analytical structure adopted by this Circuit in *United States v. Rivera,* 994 F.2d 942, 949 (1st Cir.1993):

> The Commission's treatment of departure factors led then-Chief Judge Breyer to explain that a sentencing court considering a departure should ask the following questions:
>
> "1) What features of this case, potentially, take it outside the Guidelines' 'heartland' and make of it a special, or unusual, case?
>
> 2) Has the Commission forbidden departures based on those features?
>
> 3) If not, has the Commission encouraged departures based on those features?
>
> 4) If not, has the Commission discouraged departures based on those features?"
>
> We agree with this summary.

*Koon,* — U.S. —, —, 116 S.Ct. 2035, 2045 (quoting *Rivera,* 994 F.2d 942).

The Supreme Court continued:

> If the special factor is a discouraged factor, or an encouraged factor already taken into account by the applicable Guideline, the court should depart only if the factor is present to an exceptional degree or in some other way makes the case different from the ordinary case where the factor is present. If a factor is unmentioned in the Guidelines, the court must, after considering the "structure and theory of both relevant guidelines and the Guidelines taken as a whole," decide whether it is sufficient to take the case out of the Guideline's heartland. The court must bear in mind the Commission's expectation that departures based on grounds not mentioned in the Guidelines will be "highly infrequent."

*Id.*

To adopt the categorical approach to job loss from business failures that the district court appeared to take would run afoul of one of the important concerns articulated in *Koon.* The Supreme Court has held that generally courts should not categorically reject a factor as a basis for departure from a Guidelines sentence because:

> Congress did not grant federal courts authority to decide what sorts of sentencing considerations are inappropriate in every circumstance. Rather, 18 U.S.C. § 3553(b) instructs a court that, in determining whether there exists an aggravating or mitigating circumstance of a kind or to a degree not adequately considered by the Commission, it should consider "only the sentencing guidelines, policy statements, and official commentary of the Sentencing Commission." .... The Commission set forth factors courts may not consider under any circumstances but made clear that with those exceptions, it "does not intend to limit the kinds of factors, whether or not mentioned anywhere else in the guidelines, that could constitute grounds for departure in an unusual case." 1995 U.S.S.G. ch. I, pt. A, intro. comment. 4(b). *Thus, for the courts to conclude a factor must not be considered under any circumstances would be to transgress the policymaking authority vested in the Commission.*

*Id.* (emphasis added). Categorical interpretations "would nullify the Commission's treatment of particular departure factors and its determination that, with few exceptions, departure factors should not be ruled out on

a categorical basis." *Id.* at ——, 116 S.Ct. at 2051.[7]

The district court's categorical approach also presents a question of law, which, if incorrectly decided, constitutes an abuse of discretion. As the Supreme Court noted:

> The Government is quite correct that whether a factor is a permissible basis for departure under any circumstances is a question of law, and the court of appeals need not defer to the district court's resolution of the point.... A district court by definition abuses its discretion when it makes an error of law.

*Id.* at ——, 116 S.Ct. at 2047.

*Koon,* we believe, reinforces this Circuit's view that "[p]lenary review is appropriate where the question in review is simply whether the allegedly special circumstances (i.e., the reasons for the departure) are of the 'kind' that the Guidelines, in principle, permit the sentencing court to consider at all." *Rivera,* 994 F.2d at 951. This is so because this court, "in deciding whether the allegedly special circumstances are of a 'kind' that permits departure, will have to perform the 'quintessentially legal' function of interpreting a set of words, those of an individual guideline, in light of their intention or purpose." *Id.*

■ It is clear that the Guidelines do not explicitly list the factor at issue here among the forbidden or the discouraged factors. The question is whether the Commission's "vocational skills" comment[8] implicitly discourages consideration of job loss to innocent employees. We note first that "vocational skills" themselves are not a forbidden factor, but a discouraged factor. *Compare* U.S.S.G.

§ 5H1.10 (race, sex, national origin et al. "are not relevant" in determination of sentence) *with* U.S.S.G. § 5H1.2 ("vocational skills are not ordinarily relevant"). Therefore, even if the present case merely concerned vocational skills, a per se approach would be inappropriate and the district court would still have to consider whether the case was in some way "different from the ordinary case where the factor is present." *Koon,* —— U.S. at ——, 116 S.Ct. at 2045. "[A] federal court's examination of whether a factor can ever be an appropriate basis for departure is limited to determining whether the Commission has proscribed, as a categorical matter, consideration of the factor. If the answer to the question is no ... the sentencing court must determine whether the factor, as occurring in the particular circumstances, takes the case outside the heartland of the applicable Guideline." *Id.* at ——, 116 S.Ct. at 2051.

We do not agree with the Government's contention that the loss of employment to innocent employees necessarily falls within the term "vocational skills."[9] That a defendant may have vocational skills of great value or rarity does not necessarily tell one whether incarceration of that defendant will entail job loss to others totally uninvolved in the defendant's crimes. Vocational skills may or may not be related to job loss to others.

Our belief that courts should be careful not to construe the categories covered by the Guidelines' factors too broadly finds support in *Koon.* There, the Supreme Court recognized that while "socio-economic status" of the defendant is an impermissible ground for departure and "a defendant's career may relate to his or her socio-economic status, ...

---

7. The Government's argument here relies on a general distinction between harm to society, which, it says, may be an extraordinary factor, and business failure, which, it says, may not. The Supreme Court rejected this type of argument in *Koon:*

> The Government seeks to avoid the factual nature of the departure inquiry by describing it at a higher level of generality linked closely to questions of law. The relevant question, however, is not, as the Government says, "whether a particular factor is within the 'heartland'" as a general proposition, but whether the particular factor is within the heartland given all the facts of the case.... These considerations are factual matters.

*Koon,* —— U.S. at ——, 116 S.Ct. at 2047 (citations omitted).

8. The Commission statement results from the instructions of Congress that the Commission's guidelines and policy statements "reflect the general inappropriateness of considering the ... vocational skills, employment record, ... and community ties of the defendant." 28 U.S.C. § 994(e); *see Mogel,* 956 F.2d at 1564.

9. The dictionary definitions of "vocational skills" do not import notions of business failures. *See Sharapan,* 13 F.3d at 784 (describing a dictionary definition of "vocational skills").

the link is not so close as to justify categorical exclusion of the effect of conviction on a career. Although an impermissible factor need not be invoked by name to be rejected, socio-economic status and job loss are not the semantic or practical equivalents of each other." *Koon*, — U.S. at ——, 116 S.Ct. at 2051.[10]

As *Koon* holds that job loss by the defendant resulting from his incarceration cannot be categorically excluded from consideration, we think it follows that job loss to innocent employees resulting from incarceration of a defendant may not be categorically excluded from consideration. Further, the rejected link between the socio-economic status of a defendant and a defendant's personal job loss is, we think, stronger than the link the Government posits between "vocational skills" of a defendant and certain loss of employment to innocent employees. To add a judicial gloss equating job loss by innocent third parties with "vocational skills" is to run headlong into the problem of judicial trespass on legislative prerogative against which the Supreme Court warned in *Koon*. We do not travel this path.

■ Because we are remanding on the tax loss issue and the district court will make further findings on that point, we believe the wisest course is to remand on this issue as well. In addition, it is unclear to us whether the government and defendants have had the opportunity to put on the evidence they would have wished had a non-categorical approach been taken.[11] In rejecting the government's categorical imperative approach,[12] we do not suggest that the defendants' argument establishes that they fall outside of the heartland. It is a rare case which does fall outside. As courts have recognized, incarceration of a defendant inevitably means that the defendant will no longer be employed in his previous position and that fact inevitably will have consequences. *See, e.g., Milikowsky*, 65 F.3d at 8 ("[T]he Commission could hardly have overlooked the effect that imprisonment of offenders would have on small businesses that are likely to be heavily dependant on those very offenders for their continuing success."). The mere fact that innocent others will themselves be disadvantaged by the defendants' imprisonment is not alone enough to take a case out of the heartland. These issues are matters of degree, involving qualitative and quantitative judgments. Bruce M. Selya & Matthew Kipp, *An Examination of Emerging Departure Jurisprudence Under the Federal Sentencing Guidelines*, 67 Notre Dame L.Rev. 1, 7–8 (1991). As this court said in *Rivera*:

It may not be unusual, for example, to find that a convicted drug offender is a single mother with family responsibilities, but, at some point, the nature and magnitude of family responsibilities (many children? with handicaps? no money? no place for children to go?) may transform the "ordinary case" of such circumstances into a case that is not at all ordinary.

*United States v. Rivera*, 994 F.2d at 948; *accord United States v. Sclamo*, 997 F.2d 970 (1st Cir.1993); *see also Koon*, — U.S. at ——, 116 S.Ct. at 2051 (it is not unusual for public officials convicted of violating 18 U.S.C. § 242 to be subject to career related consequences, so these consequences alone do not make a case unusual).

Given our decision to vacate the sentence and remand for further proceedings, consideration of the defendants' acquitted conduct arguments would be premature.

We close with words from *Koon* on which all of the Justices agreed:

no evidence to suggest that the business would fail were Mrs. Olbres incarcerated.

---

**10.** *Koon* similarly rejected the government's argument that because "physical appearance" is a discouraged factor, the broader category of physical abuse in prison, including that resulting from physical appearance, could not be considered. — U.S. at——, 116 S.Ct. at 2051.

**11.** Though the defense treated Mr. and Mrs. Olbres identically for sentencing purposes, evidence was presented only on Mr. Olbres' importance to DC. Each defendant must be considered individually. We note that there was

**12.** We note that the opinions from our sister circuits on which the government has relied, *Sharapan, Rutana*, and *Mogel*, were all decided without the benefit of *Koon*. In distinguishing those cases, we decide only that there is no categorical barrier to the district court's consideration of a departure—not that a departure would be proper on these facts.

The goal of the Sentencing Guidelines is, of course, to reduce unjustified disparities and so reach towards the evenhandedness and neutrality that are the distinguishing marks of any principled system of justice. In this respect, the Guidelines provide uniformity, predictability, and a degree of detachment lacking in our earlier system. This too must be remembered, however. It has been uniform and constant in the federal judicial tradition for the sentencing judge to consider every convicted person as an individual and every case as a unique study in the human failings that sometimes mitigate, sometimes magnify, the crime and the punishment to ensue. We do not understand it to have been the congressional purpose to withdraw all sentencing discretion from the United States District Judge. Discretion is reserved within the Sentencing Guidelines.

*Id.* at ——, 116 S.Ct. at 2053. Even were we not obliged to agree, we would.

We vacate the sentence and remand. *United States v. Carvell,* 74 F.3d 8 (1st Cir. 1996).