# United States Court of Appeals

## For the First Circuit

No. 03-2067

UNITED STATES OF AMERICA,

Appellant,

v.

FRANK F. DERBES,

Defendant, Appellee.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Richard G. Stearns, U.S. District Judge]

Before

Boudin, Chief Judge,

Lynch and Howard, Circuit Judges.

Michael J. Pineault, Assistant United States Attorney, with whom Michael J. Sullivan, United States Attorney, was on brief for appellant.

Thomas R. Kiley with whom William J. Cintolo and Cosgrove, Eisenberg and Kiley, P.C. were on brief for appellee.

May 27, 2004

**BOUDIN**, <u>**Chief Judge**</u>.  Frank and Robert Derbes are officers of the Derbes Brothers construction company in Quincy, Massachusetts.  Beginning in 1995, they used various devices to understate company and personal federal tax liability.  For example, one scheme involved having the company write checks made payable to various subcontractors (some fictional and some real), deducting these payments as business expenses, and then having Derbes Brothers' employees cash the checks at local banks and return the cash to the company.  The total revenue loss to the government attributed to Frank Derbes was about $500,000.

The scheme was uncovered, and the government indicted the brothers for six counts each of tax evasion in violation of 26 U.S.C. § 7201 (2000).  Both brothers pled guilty in November 2002.  After sentencing adjustments for acceptance of responsibility, both brothers faced guidelines ranges of 15 to 21 months imprisonment.  U.S.S.G. §§ 2T1.1, 2T4.1 (1997).  Both moved for a downward departure on multiple grounds.

The district court granted Frank Derbes a four-level downward departure, sentencing him to nine months of home confinement with electronic monitoring, plus an additional fifteen months of probation.  The district court granted Robert Derbes a one-level departure, sentencing him to a year and a day in prison, plus two years of supervised release.  The government appeals only the four-level departure granted to Frank Derbes (whom we will

refer to simply as "Derbes"), arguing that the departure was not based on legitimate concerns nor supported by the factual record.

The district judge's remarks at the sentencing hearing were brief. After rejecting several suggested grounds of departure--aberrant behavior, charitable contributions--the court said:

> The two plausible grounds for a departure are the ones identified by counsel, including government's counsel.
>
> Under Olbres, [99 F.3d 28 (1st Cir. 1996)], there is some latitude under the Guidelines for considering the impact an incarcerated sentence may have on the employees of a small business that might otherwise be placed underwater by the incarceration of a business principal.
>
> And health is a concern . . . .
>
> His medical conditions are aggravated. They are not of the type that the Bureau of Prisons, for the most part, could not adequately treat, but what concerns me is the fact that he's been under psychiatric care now for some seven years; and the one thing I do not think the Bureau of Prisons could provide is the connection with Mr. Derbes' treating psychiatrist that has developed over time.

The judge's subsequent written statement of the grounds for departure says only that the departure was granted because of "medical reasons as more fully stated on the record in open court." Given this cross-reference, the district court's phrase "medical conditions" presumably refers only to mental health concerns; there

is no indication that Frank Derbes' physical health problems (described by his doctor as "stable") could support a departure.

Mental condition is a discouraged basis for departure under the guidelines, U.S.S.G. § 5H1.3, so a departure is warranted only if circumstances are extraordinary, see U.S.S.G. ch. 5, pt. H, introductory cmt.; United States v. Maldonado-Montalvo, 356 F.3d 65, 74 (1st Cir. 2003).[1]  The able and experienced district judge thought Derbes' condition qualified under this standard, but at the time of sentencing, the district judge had no obligation to provide written findings.  Compare 18 U.S.C.A. § 3553(c) (2004) (written findings now required).  So we must reconstruct the basis and reasoning from the record.

The presentence report explains that Frank Derbes has been under the care of a psychiatrist, Dr. Lee Chartock, since 1997.  In two paragraphs, the report explains that Derbes had in the past struggled with thoughts of suicide and occasionally heard voices, but these problems have not recurred since he has been

---

[1]Derbes attempts to avoid the "discouragement" of section 5H1.3 by pointing to the unqualified statutory statement that, in imposing a sentence, the court "shall consider" inter alia the need "to provide the defendant with . . . medical care."  18 U.S.C. § 3553(a)(2)(D) (2000).  However, subsection (b) says that the court has to follow the Guidelines, unless a factor was not adequately considered by the Commission, id. § 3553(b), and the cases hold that both mental and physical condition are factors discouraged by the Commission, regardless of whether the concern is with the need for treatment or with some other implication.  See, e.g., United States v. Martin, 363 F.3d 25 (1st Cir. 2004); Maldonado-Montalvo, 356 F.3d at 74.

under the care of Dr. Chartock.  Derbes sees Dr. Chartock "for individual therapy as well as medication monitoring," and Derbes says that without his medication he tends to get "confused."  In the plea hearing, Derbes testified that he had been diagnosed as having a "chemical imbalance and depression" seven years before, and that he found it "very difficult to function" before he was put on the medications.

In a letter to the court, Dr. Chartock stated that he had been treating Frank Derbes since 1997 for major depression and generalized anxiety disorder.  Dr. Chartock explained that it had taken several years to find the right combination of medications to "effectively stabilize" Derbes, and that it was very important to maintain the current regime of Paxil, Effexor, and Serax.  Dr. Chartock noted that these substances might not be available in prison, and he said that altering the treatment regime "may result in destabilizing Mr. Derbes, causing him to revert to a deep depression and significant panic and anxiety."

The PROTECT Act changed the standard of review applied to departures from the guidelines, eliminating the deference previously accorded to a district court's application of the guidelines to the facts of the case, see, e.g., United States v. Lujan, 324 F.3d 27, 31 n.5 (1st Cir. 2003) (discussing deference); instead Congress requires us to review sentencing departures de novo, giving deference only to the district court's observation of

witnesses and raw factual findings. 18 U.S.C.A. § 3742(e) (2004); United States v. Thurston, 358 F.3d 51, 70 (1st Cir. 2004). Although Derbes was sentenced on April 29, 2003--one day before the PROTECT Act became law--the new standard of review on appeal applies to his case. See Thurston, 358 F.3d at 70.

Arguably, the present case falls between two of our recent precedents. In one, Maldonado-Montalvo, we reversed a departure granted by the district court based on defendant's depressive condition--which was serious, although it apparently did not include explicit threats of suicide. 356 F.3d at 73-75. There, the defendant had responded to medication and, while his doctor wrote that incarceration would be a "catastrophic blow," id. at 75, there was apparently no discussion of whether the same medical regime would be available in prison.

By contrast, in United States v. Martin, 363 F.3d 25 (1st Cir. 2004), we sustained a departure based on physical condition, also a discouraged departure, see U.S.S.G. § 5H1.4. There, it was shown that the defendant had a history of Crohn's Disease, that Demerol was the only treatment that had proven successful, and that the Bureau of Prisons would not provide this medication. Id. at 49-50 & n.39. While BOP said it could treat Martin's condition by other means, we noted that Martin's health was "exceptionally fragile" and that BOP had not been specific in describing alternatives. Id. at 50.

In the case at hand, Derbes submitted medical evidence that only one combination of drugs had proved successful and that an alteration in this regime would likely prove harmful. However, absent a further finding that the drugs would be unavailable in prison, the case looks much like Maldonado-Montalvo. To bring it within Martin or any other obvious formula supporting a departure, one would have to find Derbes would not get, or was at least unlikely to get, adequate treatment in prison.

Dr. Chartock stated in a letter that he "understand[s]" that the specific drugs he had prescribed for Derbes might not be available in prison. Yet the record is inconclusive on this point; and, equally important, it is not clear how far the district judge was concerned about the lack of drugs. While the judge did express interest in knowing exactly what medications Dr. Chartock prescribed for Derbes, the judge's oral statement concluded by saying, "the one thing I do not think the Bureau of Prisons could provide is the connection with Mr. Derbes' treating psychiatrist that has developed over time."

This supposed vital connection could refer to drugs that would not be obtainable in prison or refer only to the therapeutic relationship between doctor and patient. If the former, the record is distressingly thin as to whether the drugs would be available or not. If the latter, there is little to show that it was the personal relationship that was essential to Derbes' mental health

and nothing to show that some adequate substitute would be unavailable in prison.

We inquired of the government at oral argument about whether the drugs in question would be available. Although the burden of justifying a downward departure is on the defendant, the government obviously has superior knowledge of what BOP permits. In response the government offered BOP's own representation that "BOP offers inmates a full range of mental health services," Fed. Bureau of Prisons, U.S. Dep't of Justice, Legal Resource Guide to the Federal Bureau of Prisons 31 (2003), but such general assurances have not been given much weight. Martin, 363 F.3d at 50; United States v. Gee, 226 F.3d 885, 902 (7th Cir. 2000).

On May 4, 2004, the government submitted a 28(j) letter saying that BOP's regional counsel had "recently clarified that BOP does treat inmates with controlled substances, including narcotics, when determined medically necessary by BOP medical staff" and adding that two of the three drugs currently prescribed for Derbes are listed in the BOP formulary and are not controlled substances; as to the third, Serax, the letter says that it is not in the formulary but that "BOP has informed the government [that] appropriate substitutes are listed in the formulary."

Derbes has now responded, objecting to consideration being given to the letter because the facts asserted are not part of the record and should be open to dispute in the district court.

We appreciate the government's letter; it sought to clarify and correct answers that we ourselves had sought and received from government counsel during oral argument. But, of course, Derbes is not bound to accept this proffer as accurate, and there may be further issues that Derbes might like to raise--such as to whether realistically he has any likelihood of receiving such treatment.

In all events, the government's letter may cast further doubt on the prospects for a departure on mental health grounds but we remain of the view that a remand is the proper solution in this case. Putting aside the government's recent letter, we cannot uphold the present departure since there is as yet no firm basis in the record for concluding that Derbes' imprisonment will prevent adequate treatment, whether based on required drugs or a unique therapeutic relationship. But given the district court's doubts and ample gaps in the record, we are not willing to rule out the possibility that a departure might yet be justified.

At the same time, it should be stressed again that our cases are stringent in distinguishing between serious mental health problems and a truly "extraordinary" case. See United States v. Studley, 907 F.2d 254, 259 (1st Cir. 1990); United States v. DeCologero, 821 F.2d 39, 43 (1st Cir. 1987). BOP is by no means required to tailor a perfect plan for every inmate; while it is constitutionally obligated to provide medical services to inmates, Estelle v. Gamble, 429 U.S. 97, 103-05 (1976), these services need

only be on "a level reasonably commensurate with modern medical science and of a quality acceptable within prudent professional standards." DeCologero, 821 F.2d at 43.

One other ground of departure was suggested by the district court's oral statement, namely, the rare possibility recognized in United States v. Olbres, 99 F.3d 28, 31-36 (1st Cir. 1996), of a departure where the defendant is essential to a small business whose innocent employees might suffer if the company goes out of business. However, the district judge did not repeat this oral reference in his written statement and apparently the release of Robert Derbes from prison is imminent.

Nevertheless, we do not foreclose the possibility of a departure on this ground if it was intended as an alternative basis in the district court's oral discussion, if Derbes continues to urge a departure on this basis, and if the district court believes that the current facts still support such a departure. The government did not argue the point on appeal, taking the view that the district court had not relied upon Olbres at all, but in light of the remand, we express no view on this matter.

This remand brings to light a quirk of the PROTECT Act. In most situations appellate courts have great flexibility in shaping the scope of the mandate on remand. See 28 U.S.C. § 2106 (court may "remand the cause and direct the entry of such appropriate judgment, decree, or order, or require such further

-10-

proceedings to be had as may be just under the circumstances");
United States v. Maldonado, 242 F.3d 1, 3-4 (1st Cir. 2001).  Prior
to the PROTECT Act, the circuits had developed standards for what
could be considered on a general remand for resentencing.  See,
e.g., United States v. Ticchiarelli, 171 F.3d 24, 31 (1st Cir.
1999).

But the PROTECT Act says that on remand, the district
court may not depart except upon a ground that

> (A) was specifically and affirmatively
> included in the written statement of reasons
> required by section 3553(c) in connection with
> the previous sentencing of the defendant prior
> to the appeal; and

> (B) was held by the court of appeals, in
> remanding the case, to be a permissible ground
> of departure.

18 U.S.C.A. § 3742(g) (2004).

Although applying the PROTECT Act's appellate standard of
review to pending appeals is appropriate, see Thurston, 358 F.3d at
71-72, it would make no sense to apply section 3742(g)(A)
retroactively to sentences imposed before its enactment because
district courts were not at that time required to make the "written
statement of reasons [now] required by section 3553(c)."  Accord
United States v. Kostakis, No. 02-1647, 2004 WL 691658, at *6 (2d
Cir. Apr. 2, 2004) (section 3742(g) limits do not apply in cases
where initial sentencing occurred before PROTECT Act became

effective); United States v. Cole, 357 F.3d 780, 786 (8th Cir. 2004) (same).

In any event, the district court in this case did affirmatively depart on mental health grounds in the previous round of sentencing and referred (ambiguously) to Olbres. We mention this new provision primarily to alert district court judges to the change. Ordinarily it would be wise for sentencing courts to rule expressly on each requested ground for departure, thus avoiding any constraints that section 3742(g)(A) might otherwise cause if the case were later remanded.

Finally, in their briefs, the parties debate the issue whether the time Derbes has spent in home confinement and probation should be credited against any sentence of imprisonment that may be imposed on remand. The point was decided last month in Martin, 363 F.3d 25, which provides all the guidance necessary. Id. at 37-40. It is generally helpful to Derbes; but how helpful depends on a judgment of the district court as to the amount of the credit. In any event such a credit depends on whether on remand Derbes would otherwise receive a prison sentence.

We vacate the district court's sentence and remand for resentencing. On remand the district court may consider Derbes' need for therapy and medications, Olbres, and--if imprisonment is imposed--the amount of credit that Derbes deserves for the nine

months he has spent in home confinement and any additional time spent on probation.

It is so ordered.