**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

UNITED STATES OF AMERICA,
Plaintiff-Appellant,

v.                                                                      No. 97-4006

WILBERT H. LAWRENCE, SR.,
Defendant-Appellee.

UNITED STATES OF AMERICA,
Plaintiff-Appellant,

v.                                                                      No. 97-4007

JAMES EDWARD JONES,
Defendant-Appellee.

Appeal from the United States District Court
for the Eastern District of Virginia, at Norfolk.
Raymond A. Jackson, District Judge.
(CR-96-103)

Argued: August 14, 1997

Decided: September 11, 1997

Before RUSSELL and HALL, Circuit Judges, and MICHAEL,
Senior United States District Judge for the Western District of
Virginia, sitting by designation.

_____

Vacated and remanded by unpublished per curiam opinion.

_____

**COUNSEL**

**ARGUED:** Alan Mark Salsbury, Assistant United States Attorney, Norfolk, Virginia, for Appellant. Patrick Hugh O'Donnell, KAUFMAN & CANOLES, Norfolk, Virginia, for Appellee Lawrence; Robert Bruce Rae, RAE, FORBES & HALL, P.C., Virginia Beach, Virginia, for Appellee Jones. **ON BRIEF:** Helen F. Fahey, United States Attorney, Norfolk, Virginia; William G. Otis, Senior Litigation Counsel, UNITED STATES ATTORNEY'S OFFICE, Alexandria, Virginia, for Appellant.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

The United States appeals the sentences imposed on Wilbert Lawrence and James Jones following their convictions for conspiracy to defraud the United States and making false declarations before a federal grand jury, in violation of 18 U.S.C. #8E8E # 371 and 1623. Because we conclude that the district court's decisions to depart downward from the applicable guidelines range were an abuse of discretion, we vacate the sentences and remand for resentencing.

I.

Defendant Wilbert Lawrence runs a business, Lawrence Landscaping and Maintenance Service, Inc., which employs about 80 persons. In February 1995, Lawrence Landscaping was preparing to bid on a janitorial services contract for a Navy compound in Norfolk, Virginia. The Navy's existing contract was with Alrod Enterprises; it was set to expire in May 1995.

Lea Ann Fipps was the finance manager of Alrod Enterprises, and defendant James E. Jones was its director of marketing for schools

2

and colleges. Fipps and Jones had apparently grown disenchanted at Alrod, so they hatched a plot to make sure that Lawrence Landscaping obtained the Navy contract and to then take jobs with Lawrence Landscaping.

On March 18, 1995, Jose Madry, a Lawrence Landscaping employee, met with Fipps and Jones at Lawrence Landscaping's office in Portsmouth. Wilbert Lawrence was present. Fipps gave Madry a folder with copies of Alrod's actual contract expenditure sheets for several preceding months. This information was confidential and proprietary to Alrod, and Fipps had no authority to disclose it. Fipps had placed a Post-It**TM** Note on the folder to Madry stating that the papers "are budget sheets for CINCLANT[the Navy contract] and will show you <u>actual</u> expenditures. . . . Please keep these sheets confidential for me! I ask that you get rid of them when we're finished! Thanks!"

Lawrence told Madry to consult with Fipps in preparing Lawrence Landscaping's bid. Over the next week, Madry worked closely with Fipps, both over the telephone and in person, to finish the paperwork. Lawrence was present when Fipps and Madry met in person.

On April 3, 1995, Lawrence submitted Lawrence Landscaping's bid. There were four other bidders, including Alrod Enterprises. Lawrence Landscaping's bid was the lowest, at approximately $1.35 million. The next highest was just a few thousand more; Alrod's was much higher, at almost $1.8 million.

Fipps resigned from Alrod that same day. As the conspirators expected, the Navy contract was awarded to Lawrence Landscaping. Jones quit Alrod on May 1, and both he and Fipps were hired by Lawrence Landscaping.

These events apparently aroused the government's suspicion, and a grand jury investigation began. Lawrence, Fipps, and Jones lied to the grand jury: Lawrence stated that neither he nor any of his employees had received the Alrod cost information, Jones denied being present when Fipps gave the information to Madry, and Fipps denied giving the information at all.

Lawrence, Jones, and Fipps were charged with making false declarations to the grand jury and conspiracy to defraud the United States. Following a jury trial, they were convicted.

The guidelines range for their crimes was 10-16 months.**1** Though Fipps received an active prison sentence, the district court departed downward for Lawrence and Jones. They were sentenced to probation and six months' home confinement.

The government appeals the sentences of Lawrence and Jones. We have jurisdiction under 18 U.S.C. § 3742(b).

II.

A sentencing court may depart from the guidelines only if the case features an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission, and the circumstance is one for which a departure "should result." United States v. Hummer , 916 F.2d 186, 192 (4th Cir. 1990), cert. denied, 499 U.S. 970 (1991). We review the district court's decision to depart under an abuse of discretion standard. Koon v. United States, 116 S.Ct. 2035, 2046-2048 (1996). Each guideline carves out a "heartland" of typical cases; consequently, if a circumstance is typical for the offense, it provides no basis for a departure. Id. at 2043. Moreover, reliance on an erroneous legal ground for departure is always an abuse of discretion, id. at 2045, and departures on grounds not mentioned in the guidelines should be"highly infrequent." Id. at 2047. With these principles in mind, we turn to the present case.

Why did the district court depart? First, the court was impressed by the defendants' exemplary lives. Both were 52 years old, had no criminal records, had served in the military, and had superb reputations in the community. Both had risen from humble beginnings to success in legitimate business. In the context of these industrious, law-abiding lives, the court found that the offense conduct was aberrational.

_____

**1** Criminal History Category I and Offense Level 12 yield this range.

4

As to Lawrence, the court also took into account that his 80 employees would likely lose their jobs if he were jailed and that his business would suffer significant collateral consequences (like debarment from government contracts and civil liability) that mitigated the need for imprisonment.

These circumstances cannot justify a departure. The age of the defendant is not ordinarily relevant unless he is elderly and infirm. U.S.S.G. § 5H1.1. The district court suggested that there is a difference between a 22-year-old with no record and a 52-year-old, and the older man should receive credit for obeying the law longer. This analysis assigns direct relevance to age per se, which is precisely what § 5H1.1 forbids. In addition, we note that the defendants' ages are typical of those charged with similar crimes.

A crime-free life simply places one in Criminal History Category I. The guidelines recognize no gradations among previously law-abiding defendants. One could argue that there is a great variety of morality among the non-criminal element of our society, and a sentencing court ought to be able to take a defendant's prior good deeds into account. The Sentencing Commission fully considered this option and chose not to adopt it. U.S.S.G. § 5H1.11 (past good deeds, military service, etc., "not ordinarily relevant"). Though § 5H1.11 leaves the door ever so slightly ajar for a defendant of truly extraordinary past virtue, our precedent establishes that neither Lawrence nor Jones can open it. See United States v. Rybicki , 96 F.3d 754 (4th Cir. 1996) (defendant was a highly-decorated Vietnam veteran, had saved an innocent civilian during the My Lai massacre, and had served in the Secret Service; these good deeds did not warrant a departure); United States v. McHan, 920 F.2d 244, 247 (4th Cir. 1990) (defendant's work history, family ties and responsibilities, and extensive contributions to town's economic well-being could not justify downward departure).

The guidelines do countenance downward departure for a "single act[ ] of aberrant behavior." U.S.S.G., Ch.1, Pt. A, Introduction, ¶ 4(d) (emphasis added). "Aberrant" means something more than a person's first offense -- else Criminal History Category I is meaningless -- and the requirement of a "single" act excludes any scheme involving planning or conduct over a period of time.

5

> A single act of aberrant behavior suggests "a spontaneous and seemingly thoughtless act rather than one which was the result of substantial planning because an act which occurs suddenly and is not the result of a continued reflective process is one for which the defendant may be arguably less accountable."

United States v. Glick, 946 F.2d 335, 338 (4th Cir. 1991) (quoting United States v. Carey, 895 F.2d 318, 325 (7th Cir. 1990)). The fraud took a good deal of planning, and it was followed by false grand jury testimony many months later. This conduct cannot constitute a "single act of aberrant behavior."

The "collateral consequences" to Lawrence Landscaping are not at all atypical in a government contractor fraud case. Indeed, they define the paradigm: one would expect the government to refuse to contract with those who have defrauded it. Because these consequences are typical of the offense, they offer no basis for departure.

Lastly, the court was concerned that Lawrence Landscaping's 80 employees, many of them downtrodden folk who could not easily find jobs elsewhere, might lose their jobs if Lawrence were in jail. The government again points out that fraud by government contractors almost always involves a business, often a small one like Lawrence Landscaping, and jailing the boss puts the business at peril. There is nothing atypical here.[2] In addition, the government notes that the guidelines expressly discourage departures on account of the needs of a defendant's family,[3] and asks rhetorically whether we should be more sympathetic to the displaced worker in the unemployment office or the displaced child in the orphanage. As for all good rhetorical questions, the answer is self-evident.

_____

[2] The Third and Sixth Circuits have reached similar conclusions. United States v. Sharapan, 13 F.3d 781, 784-786 (3rd Cir. 1994); United States v. Rutana, 932 F.2d 1155, 1158 (6th Cir.), cert. denied, 502 U.S. 907 (1991). But see United States v. Milikowsky, 65 F.3d 4 (2nd Cir. 1995).

[3] U.S.S.G. § 5H1.6; see United States v. Weddle, 30 F.3d 532, 540-541 (4th Cir. 1994) (defendant's status as a single parent was "unfortunate" but not atypical).

6

The sentences are vacated, and the cases are remanded with instructions to resentence the defendants within the prescribed 10-16 months range.

VACATED AND REMANDED

7