**UNITED STATES of America,
Appellee–Cross–Appellant,**

v.

**Daniel MILIKOWSKY, Defendant–
Appellant–Cross–Appellee,**

**MACC Holding Corporation, Defendant.**

Nos. 1386, 1387, Dockets 94–
1450, 94–1492 *, 94–1493.

United States Court of Appeals,
Second Circuit.

Argued April 27, 1995.

Decided Aug. 30, 1995.

* voluntarily withdrawn.

Steven A. Steinbach, Washington, DC (Regina G. Maloney, Williams & Connolly, of counsel), for defendant-appellant and defendant-appellant-cross-appellee.

Marion Jetton, U.S. Department of Justice, Washington, DC (Anne K. Bingaman, Assistant Attorney General, Diane P. Wood, Deputy Assistant Attorney General, John J. Powers, III, and Peter J. Levitas, of counsel), for appellee-cross-appellant.

Before: OAKES, McLAUGHLIN and LEVAL, Circuit Judges.

OAKES, Senior Circuit Judge:

This appeal raises the issue, under the Sentencing Guidelines, whether a district court may downwardly depart in order to avoid imprisoning an antitrust offender when imprisonment would impose extraordinary hardship on the defendant's employees.

Daniel Milikowsky appeals, and the government cross-appeals, from a judgment of conviction entered August 10, 1994, following a jury trial in the United States District Court for the District of Connecticut (Ellen Bree Burns, J.). The jury convicted Milikowsky, a principal in several small steel-related businesses, of one count of price-fixing, in violation of the Sherman Act, 15 U.S.C. § 1. Departing downward to avoid imposing a prison sentence, the court sentenced Milikowsky to two years' probation, conditioned on a period of six months' home confinement and 150 hours of community service, and a $250,000 fine.

Milikowsky contends that his conviction should be overturned for three reasons: (1) the government failed to correct, and knowingly reinforced, the false testimony of a prosecution witness, Benjamin DeBerry; (2) the court wrongly limited cross-examination of DeBerry; and (3) the government made prejudicial comments during its closing argument. On cross-appeal, the government contends that the district court erred in departing downward one offense level from the applicable Guidelines range because of the effect that imprisonment would have on Milikowsky's employees. Milikowsky's contentions have been thoroughly addressed in

Judge Burns's comprehensive opinion denying Milikowsky's motions for a new trial and for acquittal, *United States v. Milikowsky*, No. 3–93–CR–191 (EBB) (D.Conn. Aug. 25, 1994), and we affirm his conviction for the reasons stated therein. We write only to address the sentencing issue.

## BACKGROUND

During the period relevant to this litigation, Milikowsky, a resident of New Haven, Connecticut, was a principal in several steel-related businesses—Jordan International Company ("Jordan"), a steel trading company headquartered in New Haven, Prospect Industries ("Prospect"), a steel pail manufacturing company, and Mid Atlantic Container Corp. ("Mid Atlantic"), which manufactured new steel drums at a plant in Linden, New Jersey, until April 1990, when its assets were sold to The Russell–Stanley Corp. In July 1993, a one-count indictment was filed in the District of Connecticut, charging Milikowsky and MACC Holding Corp. ("MACC"), the successor corporation to Mid Atlantic, along with unnamed co-conspirators, with conspiring to fix the prices of new steel drums in the eastern United States from May 1987 through April 1990. After a three-week jury trial, Milikowsky and MACC were convicted.

Under the Sentencing Guidelines (Nov. 1989 version)[1], the base offense level for an individual defendant convicted of a Sherman Act violation such as price-fixing is nine. U.S.S.G. § 2R1.1(a). Two levels are added to the offense level if the volume of commerce attributable to the defendant is more than $15 million, and three levels are added if volume is more than $50 million. *Id.* § 2R1.1(b)(2). One level is added if conduct involved bid-rigging. *Id.* § 2R1.1(b)(1).

At sentencing, the district court found the bid-rigging enhancement inappropriate, but it concluded, over Milikowsky's objection, that a two-level enhancement, for greater than $15 million volume, was appropriate. The resulting offense level, accordingly, was eleven. In view of Milikowsky's criminal history category of I, the applicable Guidelines range was eight to fourteen months' impris-

onment. Under this offense level, a split sentence is available, allowing part of the term to be served by community confinement or home detention, but imprisonment for at least half the minimum term is required. *Id.* § 5C1.1(d).

Milikowsky requested a downward departure from level eleven that would allow the court to sentence him to probation rather than prison, on the basis of the effect imprisonment would have on his family and on his employees at Jordan and Prospect. The court took note of the destructive effect imprisonment would have on Milikowsky's family, but found it insufficient by itself to justify a departure. However, the court concluded that Milikowsky's other contention—the effect of imprisonment on his employees—did allow the court to downwardly depart, and accordingly it departed down one level, to level ten. The court noted that Milikowsky's circumstances differed from those of other high-level business people it had sentenced, in that "this is a situation where I am convinced that the loss of his daily guidance would extraordinarily impact on persons who are employed by him." Transcript of sentencing of Aug. 8, 1994, at 93. Accordingly, the court placed Milikowsky on two years' probation, with the first six months to be spent in home confinement; it also sentenced him to 150 hours of community service and fined him $250,000.

## DISCUSSION

The government contends that the court's downward departure is inconsistent with the deterrence rationale of U.S.S.G. § 2R1.1 (the "Antitrust Guideline"), and that it is contrary to case law which rejects effect on employees as a ground for departure.

First, the Antitrust Guideline, as the government notes, reflects the Sentencing Commission's belief that, in order to deter potential violators, antitrust offenders should generally be sentenced to prison. The commentary to the Antitrust Guideline states that "[t]he Commission believes that the most effective method to deter individuals from

---

**1.** The parties agree that Milikowsky's sentence is governed by the November 1989 Guidelines, and all subsequent references refer to that version of the Guidelines.

committing [antitrust violations] is through imposing short prison sentences coupled with large fines. The controlling consideration underlying this guideline is general deterrence.... [I]n very few cases will the guidelines not require that some confinement be imposed." U.S.S.G. § 2R1.1, cmt. (background); *see also United States v. Haversat,* 22 F.3d 790, 797–98 (8th Cir.1994) (confinement should be imposed in "all but the rarest" criminal antitrust cases).

Second, the government cites cases from other circuits holding that the business effects of a white collar offender's incarceration generally provide no ground for departure. *See, e.g., United States v. Reilly,* 33 F.3d 1396, 1424 (3d Cir.1994) ("there was nothing extraordinary in the fact that the incarceration of a company's principal might 'cause harm to the business and its employees'"); *United States v. Sharapan,* 13 F.3d 781, 785 (3d Cir.1994); *United States v. Rutana,* 932 F.2d 1155, 1158 (6th Cir.), *cert. denied,* 502 U.S. 907, 112 S.Ct. 300, 116 L.Ed.2d 243 (1991); *United States v. Mogel,* 956 F.2d 1555, 1563–64 (11th Cir.), *cert. denied,* — U.S. —, 113 S.Ct. 167, 121 L.Ed.2d 115 (1992). Since enforcement actions by the Antitrust Division have been directed in large part against industries made up primarily of small businesses, *see Report of the American Bar Ass'n, Section of Antitrust Law, Task Force on the Antitrust Division,* 58 Antitrust L.J. 747, 755 (1990); *60 Minutes with Charles F. Rule, Assistant Attorney General, Antitrust Division,* 57 Antitrust L.J. 257, 258–61 (1988), the government contends that there is nothing "extraordinary" about the prospect of imprisoning, and potentially putting out of business, small business owners.

We are not convinced that the government's contentions require vacatur of the court's decision to depart. The Sentencing Reform Act provides that a court may impose a sentence outside the Guideline range when it finds a "mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines." 18 U.S.C. § 3553(b) (1988). The Sentencing Commission has explained that "courts should treat each guideline as 'carving out a "heartland," a set of typical cases' and that, '[w]hen a court finds an atypical case,' that 'significantly differs from the norm, the court may consider whether a departure is warranted.'" *United States v. Merritt,* 988 F.2d 1298, 1309 (2d Cir.) (quoting U.S.S.G., intro. 4(b)), *cert. denied,* — U.S. —, 113 S.Ct. 2933, 124 L.Ed.2d 683 (1993).

This court has taken this guidance firmly to heart in recent years, making clear that a district court not only can, but must, consider the possibility of downward or upward departure "when there are compelling considerations that take the case out of the heartland factors upon which the Guidelines rest." *United States v. Monk,* 15 F.3d 25, 29 (2d Cir.1994); *see also United States v. Restrepo,* 999 F.2d 640, 644 (2d Cir.) (listing cases upholding departures), *cert. denied,* — U.S. —, 114 S.Ct. 405, 126 L.Ed.2d 352 (1993); *Merritt,* 988 F.2d at 1309–10 (same). "[D]eparture in the appropriate case," we have emphasized, "is essential to the satisfactory functioning of the sentencing system." *Merritt,* 988 F.2d at 1309. "[T]he authority to depart provides a 'sensible flexibility' to insure that atypical cases are not shoe-horned into a Guidelines range that is formulated only for typical cases." *United States v. Rogers,* 972 F.2d 489, 493 (2d Cir.1992).

Among the permissible justifications for downward departure, we have held, is the need, given appropriate circumstances, to reduce the destructive effects that incarceration of a defendant may have on innocent third parties. Although a Guidelines policy statement indicates that "[f]amily ties and responsibilities ... are not ordinarily relevant in determining whether a sentence should be outside the guidelines," U.S.S.G. § 5H1.6 (policy statement), we have nonetheless held that, where a defendant's parental responsibilities were "extraordinary" and incarceration would "wreak extraordinary destruction" on her four young dependents, downward departure to avoid imprisonment was warranted. *United States v. Johnson,* 964 F.2d 124, 126–30 (2d Cir.1992); *see also United States v. Califano,* 978 F.2d 65 (2d Cir.1992) (per curiam); *United States v. Alba,* 933 F.2d 1117, 1122 (2d Cir.1991).

While the Commission undoubtedly "took ordinary family responsibilities into account when formulating the Guidelines," we reasoned, "[e]xtraordinary circumstances ... are by their nature not capable of adequate consideration" and "therefore may constitute proper grounds for departure." *Johnson,* 964 F.2d at 128.

We find the reasoning of *Johnson* applicable to the antitrust and employment context. It is true, as the government notes, that the Antitrust Guideline favors prison terms for antitrust offenders as a means of deterring potential violators. *See* U.S.S.G. § 2R1.1, cmt. (background). Additionally, in drawing up the Antitrust Guidelines, the Commission could hardly have overlooked the effect that imprisonment of offenders would have on small businesses that are likely to be heavily dependent on those very offenders for their continuing success. *See* cases cited *supra,* at 5. In considering, and taking into account, the effect of imprisonment on antitrust offenders' businesses, however, the Commission did not thereby take into account the effect imprisonment would have in "extraordinary circumstances." Such circumstances, as we explained in *Johnson,* 964 F.2d at 128, "are by their nature not capable of adequate consideration."

The issue before us, then, is whether the facts considered by the district court comprise such "extraordinary circumstances," falling outside the heartland envisioned by the Antitrust Guideline. Our *de novo* review, *see Rogers,* 972 F.2d at 492, makes clear that extraordinary effects on an antitrust offender's employees, "to a degree[ ] not adequately taken into consideration by the Sentencing Commission," warrant a downward departure. We thus review for clear error the district court's factual determination that such extraordinary circumstances are indeed present. *United States v. Jagmohan,* 909 F.2d 61, 64 (2d Cir.1990).

The district court found Milikowsky's situation extraordinary when it distinguished his case from other "high level business people" it had sentenced. Tr. of sentencing of Aug. 8, 1994, at 93. What distinguished his situation, the court noted, was the "extraordi-

nary" impact that the loss of his daily involvement would have on his business and, consequently, on his employees. *Id.* The record more than adequately supports this conclusion.

Before the court were unrebutted letters and testimony from family members, employees, business associates, and Milikowsky's chief trade creditor attesting to his indispensability to Jordan and Prospect, Milikowsky's two remaining businesses. This record, undisputed by the government, allowed the court to conclude that Milikowsky is the only individual with the knowledge, skill, experience, and relationships to run Jordan, the steel trading concern, on a daily basis: he is the sole buyer of all steel, the only person with the requisite ability and contacts to buy steel at competitive rates, the most successful seller, and the person who deals with Jordan's customers and suppliers. The record allowed the court to conclude, additionally, that Milikowsky's daily involvement at Jordan is necessary to ensure the continuing viability of Prospect, the steel pail company. Milikowsky is the sole buyer of all the steel Prospect uses to make pails, and, according to testimony, the cost advantage attributable to his steel-buying expertise is virtually the only reason that Prospect remains a viable operation.

The two companies' dependence on Milikowsky is greatly increased by the companies' extremely precarious financial condition. The two companies, as well as the Milikowsky families personally, are indebted for approximately $20 million to an international steel conglomerate, TradeARBED. According to the testimony of Milikowsky's business lawyer, Jordan and Prospect are so deeply indebted that they are unable to obtain credit from anywhere else, and TradeARBED continues to provide credit only so long as the companies remain profitable. The court, crediting the unrebutted testimony on behalf of Milikowsky, was able to conclude that the companies' continuing livelihood depends entirely on Milikowsky's personal involvement, and that, in his absence, TradeARBED might well withdraw its credit, leading to both companies' immediate bankruptcy and

the loss of employment for Jordan's employees and Prospect's 150 to 200 employees.

■ On the basis of this record, we cannot find clear error in the court's conclusion that imprisoning Milikowsky would have extraordinary effects on his employees to a degree not adequately taken into consideration by the Sentencing Commission. While we agree with our sister circuits that business ownership alone, or even ownership of a vulnerable small business, does not make downward departure appropriate, *see* cases cited *supra,* departure may be warranted where, as here, imprisonment would impose extraordinary hardship on employees. As we have noted in similar circumstances, the Sentencing Guidelines "do not require a judge to leave compassion and common sense at the door to the courtroom." *Johnson,* 964 F.2d at 125.

### CONCLUSION

We have considered all of Milikowsky's contentions as to why his conviction should be reversed, and the government's contentions as to why the sentence should be vacated, and have found no basis for either reversal or vacatur. The judgment of conviction and the sentence are affirmed.