UNITED STATES of America,
Plaintiff,

v.

Frieda KLODA and Samuel Kloda, Defendants.

No. 00 CR. 879(AKH).

United States District Court,
S.D. New York.

March 7, 2001.

Mary Jo White, United States Attorney for the Southern District of New York by Justin Weddle, Assistant United States Attorney, New York City, for Plaintiff United States.

Frank Taddeo, New York City, for Defendant Frieda Kloda.

Frank Handelman, Leslie DuBois, New York City, for Defendant Samuel Kloda.

### MEMORANDUM AND ORDER OF SENTENCING AND DEPARTURES

HELLERSTEIN, District Judge.

Defendants Samuel Kloda and Frieda Kloda, father and daughter aged 63 years old and 32 years, respectively, pleaded guilty to falsifying $886,189 of invoices for their affiliated printing businesses. Their purpose was to take fraudulent expense deductions, reducing their federal taxes an aggregate of $294,827 and their state and local taxes an aggregate of $94,076, for the five calendar years 1994 through 1998.

The Klodas pleaded guilty to federal tax evasion (26 U.S.C. § 7201) and conspiracy (18 U.S.C. § 371), subjecting them to a statutory maximum of five years imprisonment on each count, three years of supervised release, fines up to two times the gain or loss, and restitution.

The Sentencing Guidelines applicable to sentences after November 1, 2000 group

the offences at level 17,[1] less a three-level adjustment for timely acceptance of responsibility, for a net guidelines level of 14. *See* Sentencing Guidelines §§ 2T1.1; 2T4.1(L); 3E1.1(a), (b). Because neither defendant has a history of prior criminality, both defendants fall within Criminal History Category I. The resulting range under the Guidelines is fifteen to twenty-one months imprisonment followed by two to three years of supervised release, fines between $4,000 and $40,000, restitution, and a mandatory special assessment of $200.

The special conditions of the Klodas justify departures, taking into account the need to care for defendant Frieda Kloda's small children, and other considerations. I write to discuss these departures and other aspects of the sentence.

### The Sentence

I sentenced defendant Frieda Kloda to six months imprisonment, having departed four levels to level ten, with the beginning of custody to be deferred until July 20, 2000 to allow for completion by defendant Frieda Kloda's five-year old child of her school semester from her Staten Island home. I sentenced defendant Samuel Kloda to twelve months and one day imprisonment, having departed one level to level thirteen, with the beginning of custody to be deferred until two months after his daughter's term of custody ends, to allow orderly transition of custody of the two small children and appropriate business arrangements between the Klodas as to management of their printing businesses. I ordered both defendants to pay full restitution plus interest to the federal, state and local tax authorities that defendants had cheated, plus penalties as fixed by the several taxing authorities, and no additional fine. The special assessment of $200 is mandatory and is payable immediately following entry of judgment.

### The Defendants' Special Circumstances

Defendant Frieda Kloda is a single mother, and the sole support of her two small children, five and three years of age. Ms. Kloda is separated from her husband, who apparently is a regular abuser of alcohol and crack cocaine and is unfit to care for their children. Ms. Kloda's brother is involved in the family printing businesses but, with two children of his own living in a small house in Monroe, New York, claims to be unable to take care of Ms. Kloda's children while she is in jail. Two sisters of Ms. Kloda live in Florida, and I am advised that they are incapable and unwilling to take care of Ms. Kloda's children.[2] The same is the case for Ms. Kloda's sister-in-law.

Defendant Samuel Kloda has survived a quadruple bypass surgery, and claims to continue to suffer from a "severe heart condition". His wife, aged 68 and five years older, has been battling cancer, has just completed chemotherapy and, Mr. Kloda reports, her symptoms seem to be in remission. Mr. Kloda claims to work 80 hours per week in his printing businesses, and to be vitally needed for the continua-

---

1. The offense level of 17 reflects a determination, pursuant to Sentencing Guidelines Sections 2T1.1 and 2T4.1(L), that the total tax loss amount is $388,854, comprising federal tax losses of $294,827 and state and local tax losses of $94,076. Although the Defendants pleaded guilty to federal tax evasion, the total tax loss amount also encompasses the relevant conduct of state and local tax evasion. *See* Sentencing Guidelines §§ 1B1.3; 2T1.1, Application Note 2.

2. I addressed interrogatories to test these representations. The interrogatory questions and answers and further comments during the sentencing hearing confirmed the unwillingness and alleged incapability of Ms. Kloda's siblings and siblings-in-law to care for Ms. Kloda's children.

There is no way that a judge can test the honesty of this alleged unwillingness: whether it was fabricated in the hope of a probationary sentence for Ms. Kloda, or whether it was an honest, but sad, expression of indifference to basic family need. In my two years of service as a United States District Judge, I have not experienced such indifference within a family.

tion of his business. He claims that his thirteen workers, seven of whom are over 50 years old, would lose their work if he would be unable to manage the business, and that his daughter is not sufficiently knowledgeable about the business to succeed him. He and his wife claim to be too old, too busy and too ill to take care of Frieda Kloda's children, their grandchildren.

Defendants each ask for departures of sufficient levels to bring them down to Zone C which, if granted by me, would permit sentences of alternatives to imprisonment—probation, home or community confinement, etc.

Defendant Frieda Kloda pleads to be sentenced to probation. Her siblings, she argues, cannot care for her children or, like her husband, are unsuitable to do so. Her parents, she argues, are old and ill, and cannot handle her children. Her daughter, she says, is "very wild," and the younger child, a toddler, is "aggressive, wild, [and] inattentive." Thus, Ms. Kloda states,

"I am mother and father to those kids. I have gone through labor alone with those kids. I have solely supported those kids. I put a roof over their head, clothes on their back and food in their mouth. Nobody has ever helped me."

Transcript of January 26, 2001 ("Tr.") at 40. Ms. Kloda pleaded,

"...my parents are old. If my mother gets sick there is nobody to help them.... I mean, I did the crime, not them."

"But my kids are my life. I am their mother and their father. I am their life. One day [if I were to be in jail] would hurt them truly."

Tr. at 41.

### Discussion

The Sentencing Guidelines reflect the seriousness of offenses, in relation to one another and in relation to the public order. With applicable adjustments and departures, they are binding on a district judge. They are to be applied with respect to "the basic purposes of criminal punishment: deterrence, incapacitation, just punishment, and rehabilitation," see Sentencing Guidelines § 1A(2), and with sensitivity to the defendants being sentenced.

The United States is a unique country in the context of tax administration because of the extent to which people willingly pay the taxes they owe to federal, state and local governments. The corollary is that when people willfully fail to pay the taxes they owe, the willful failure is serious and deserves to be punished. Proper respect for the integrity of our tax laws and for the millions of honest taxpayers who pay their taxes requires that those who evade the laws should be appropriately punished.

Here, the Klodas created almost a million dollars of fictitious invoices over a period of several years, purposefully and willfully to defeat the right of federal, state and local governments to tax the appropriate percentages of the Klodas' true income. The crime of the Klodas was a crime against not only the federal, state and local governments that were cheated of revenues, but against also all those who paid their taxes without cheating, and against their competitors in the printing businesses who did not enjoy the extra measure of deductions that were claimed by the Klodas.

Business crimes are particularly suitable to deterrence. The certainty of a jail term appropriate to tax cheaters like the Klodas deters others who might otherwise be tempted to cheat.

Thus, both Klodas should serve a term in jail. The question is how much, for we are instructed that punishment is adequate if in the least amount that will adequately serve the goals to be served by criminal punishment, in our case, primarily the goal of deterrence. See 18 U.S.C. 3553(a). See also, e.g. United States v. DeRiggi, 893 F.Supp. 171, 182 (E.D.N.Y.1995) (noting "judge's duty to impose the least severe

sentence sufficient to accomplish the goals of sentencing"). And punishment must not be draconian; the judge who sentences must be sensitive to both the goals of society reflected by the efforts of the government, and special circumstances of those awaiting sentence. The judge must sentence in a manner that reflects his role as the implementor of society's search for justice, as reflected by due and timely punishment of those who transgress, without ever being indifferent to a defendant's plea for compassion, for compassion also is a component of justice.[3] Thus, the ancient psalmist taught,

> God takes his stand in the court of judgment; Among the judges he will render judgment.[4]

The judge, that is, speaks for society, but the judge is judged as well for his compassion for, as the ancient Rabbis put it:

> And the judges must know whom they are judging, and before whom they are judging, and who will exact punishment from them [the judges] in the future, for it is said, 'God stands in the congregation of God.'

Talmud, Sanhedrin 6B, 11.3–5 (Steinsaltz Ed.1996).

Under the Sentencing Guidelines, a judge must be concerned with positive law, and only indirectly with philosophies of just punishment and compassion. Nevertheless, as the Supreme Court held in *Koon v. United States*, 518 U.S. 81, 113, 116 S.Ct. 2035, 135 L.Ed.2d 392 (1996):

> It has been uniform and constant in the federal judicial tradition for the sentencing judge to consider every convicted person as an individual and every case

as a unique study in the human failings that sometimes mitigate, sometimes magnify, the crime and the punishment to ensue. We do not understand it to have been the congressional purpose to withdraw all sentencing discretion from the United States district judge.

Section 5K2.0 of the Guidelines permits a judge to impose a sentence outside the guideline range if the judge finds that there exists "an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the Guidelines that should result in a sentence different from that described." 18 U.S.C. § 3553(b). *See generally Koon v. United States*, 518 U.S. 81, 116 S.Ct. 2035, 135 L.Ed.2d 392 (1996).

Such departures repeatedly have been upheld in cases similar to this one. Though "[f]amily ties and responsibilities and community ties are not ordinarily relevant in determining whether a sentence should be outside the applicable guideline range," such circumstances may be considered if "present to an unusual degree." *Compare* Sentencing Guidelines § 5H1.6 *with* Sentencing Guidelines § 5K2.0. In *United States v. Alba*, 933 F.2d 1117, 1122 (2d Cir.1991), the Court of Appeals affirmed a finding of mitigating circumstances where defendant's children, disabled father, and elderly grandmother lived together and were entirely dependent on the defendant for their care. A similar downward departure was upheld in *United States v. Johnson*, 964 F.2d 124, 129–30 (2d Cir.1992), which involved a defendant who was solely responsible for the care of four young children.

---

**3.** The Latin origin of "compassion" connotes strong effect upon the actor of the external condition of the other. *See, e.g., Webster's Third New International Dictionary of the English Language* 451, 462, 1651 (Unabridged Ed.1993) (definitions of "com-", "passion", and "compassion"); *The Oxford English Dictionary* Vol. III at 597 (1989) ("suffering together with another"; "the feeling or emotion, when a person is moved by the suffering or distress of another....").

**4.** Psalm 82, as translated by De Sola Pool, *The Traditional Prayer Book* at 350 (1960). The theme of compassion is taught also in many of the New Testament parables. *See, e.g.* John 8:7 (parable of the adulteress: "let he among you who is without sin cast the first stone"); Luke 23:39 (the redemption of the thief).

The rationale for a downward departure here is not that Johnson's family circumstances decrease her culpability, but that we are reluctant to wreak extraordinary destruction on dependents who rely solely on the defendant for their upbringing.

*Id.* at 129. Furthermore, in *United States v. Milikowsky*, 65 F.3d 4, 8–9 (2d Cir. 1995), in which, without the defendant's continued presence and involvement, the defendant's business likely would collapse and thereby deprive his employees of their livelihood, the court affirmed a downward departure. As made clear by these cases and others, in appropriate circumstances the strict framework of the Guidelines may be tempered by compassion.

■ Having in mind all of these considerations, I sentence defendant Frieda Kloda to serve six months' imprisonment, thus departing four levels, from level fourteen to level ten. *See* Sentencing Guidelines § 5K2.0. Although the departure brings Ms. Kloda into Zone B, permitting alternatives to imprisonment, *see* Sentencing Guidelines § 5B1.1(a)(2), I sentence her to a six-month term of imprisonment because I consider that home detention, community confinement and other such alternatives will not adequately serve the goal of deterrence. Ms. Kloda asks that she be permitted, during her period of six months confinement, to spend weekends with her children at the home of her parents. I recommend, if such a furlough is available pursuant to prison regulations, that it be given favorable consideration, in the discretion of the warden in charge of the prison where she is confined, and at such times as the warden considers appropriate.

The answers given to my interrogatories persuade me that Ms. Kloda's husband, her siblings and her siblings-in-law are unwilling to care for her children, or are not suitable to do so. However, I consider that Mr. and Mrs. Samuel Kloda, notwithstanding their age and infirmities, are sufficiently capable to care for their grandchildren. Mr. Kloda's representations—that all his time is necessary to insure the survival of his business, the continued employment of his work force, and care of his wife, the children's grandmother—will have to be tempered. Priorities will simply have to be arranged, and there is no priority greater than the care of small children. It may even come to pass that a sibling's expressed unwillingness to extend herself and make room for a five-year-old and a three-year-old will change when the request for help is made by a grandparent rather than a judge.

Ms. Kloda asks me to defer the sentence until after the current semester, until July 10, 2000, in order that her five-year-old child may complete her semester in the school that she attends and postpone moving from her home in Staten Island to her grandparents' home in Secaucus, New Jersey until after the school semester. I grant that request.

■ With regard to defendant Samuel Kloda, I depart one level, from level fourteen to level thirteen, and sentence him to a year and a day. The departure recognizes his advanced age and that of his wife, his wife's tenuous relationship with grave cancer, his own heart problems, and the needs of his business and employees. *See United States v. Milikowsky*, 65 F.3d 4 (2d Cir.1995); Sentencing Guidelines § 5K2.0. Mr. Kloda's sentence shall begin two months following the end of Frieda Kloda's custody, to permit orderly transition of business leadership and family concerns.

Each defendant shall serve a term of supervised release of two years following the period of incarceration, under conditions more specifically defined in the judgments entered against them. *See* Sentencing Guidelines § 5D1.1. Each of the two Defendants—Samuel and Frieda Kloda—is severally obligated to pay his or her own restitution, as stipulated by the parties.[5]

---

**5.** Pursuant to the stipulations dated January 31, 2001 and February 15, 2001, restitution shall be paid as set forth below.

Since the taxing authorities will assess. penalties, a fine will multiply the same punishment and is therefore not in order. Other terms of the sentence are as provided in the judgment.

SO ORDERED.

Samuel Kloda shall pay restitution to the Internal Revenue Service in the total amount of $310,903 (tax of $188,009 plus interest of $122,894). Mr. Kloda also shall pay restitution to New York state and local taxing authorities in the amount of $76,463 (tax of $56,635 plus interest of $19,828).

Frieda Kloda shall pay restitution to the Internal Revenue Service in the total amount of $151,160 (tax of $106,818 plus interest of $44,342). Ms. Kloda also shall pay restitution to New York state and local taxing authorities in the amount of $46,146 (tax of $37,441 plus interest of $8,705).

The amounts ordered are not binding on the United States or the Internal Revenue Service in any proceeding other than this criminal prosecution. Moreover, as detailed on the record of January 26, 2001 and in the stipulations, both defendants already have paid portions of their restitution.