**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
          *Plaintiff-Appellant,*

v.

RANDY L. BRAGG,
          *Defendant-Appellee.*

No. 08-10221

D.C. No.
2:07-cr-01213-
EHC-1

OPINION

Appeal from the United States District Court
for the District of Arizona
Earl H. Carroll, District Judge, Presiding

Argued February 9, 2009
Submitted September 17, 2009
San Francisco, California

Filed September 23, 2009

Before: John T. Noonan, Marsha S. Berzon and
N. Randy Smith, Circuit Judges.

Opinion by Judge Noonan;
Dissent by Judge N. Smith

## COUNSEL

Mark Determan, Washington, D.C., for the plaintiff-appellant.

Anthony E. Colombo, San Diego, California, for the defendant-appellee.

**OPINION**

NOONAN, Circuit Judge:

The United States appeals the sentence imposed on Randy L. Bragg after he pled guilty to two counts of filing false quarterly employment tax returns in violation of 26 U.S.C. § 7206(1). We hold that the district judge failed to explain adequately the sentence he imposed. Accordingly, we vacate the sentence and remand with directions that the court explain its sentence adequately.

FACTS

In 1999, Bragg formed Consolidated Human Resources Az., Inc. (CHRAZ), an Arizona corporation providing payroll and other services to clients, taking on the clients' employees as its own and leasing them back to the clients. Bragg became the owner and president of CHRAZ.

During 2000, CHRAZ had responsibility for the employment taxes of thousands of employees. The clients of CHRAZ paid the company the employers' share of employment taxes and the amounts that the clients withheld to cover the employees' share. These sums, amounting to $2,000,000, were to be paid by CHRAZ to the Internal Revenue Service.

For the four quarters of 2000, Bragg, acting on behalf of CHRAZ, filed federal employment tax returns showing zero wages paid. For the same period, he filed state returns for CHRAZ showing over $8,000,000 in wages paid. The federal returns were false.

In April 2004, agents of the Internal Revenue Service discovered that there was a discrepancy between the federal returns and the state returns and that CHRAZ had not filed a federal corporate income tax return for 2000. On November 6, 2007, Bragg entered into a plea agreement, pleading guilty

to filing false federal employment tax returns for the quarters ending September 30, 2000 and December 31, 2000. He agreed that the tax loss was $1,202,600 and that he would make his best effort to pay this amount by the date of sentencing.

On March 14, 2008, a probation officer filed Bragg's presentence report. It established that Bragg had been twice convicted of misdemeanor sex offenses, four times of driving under the influence, and once of obstruction of the mail (for diverting checks from the IRS from the rightful recipient to his own post office box). Bragg was still on probation for the mail offense when he committed the crime at issue here.

Bragg had enlisted in the Marines at the age of 16, served seven years, had suffered a wound in "a classified incident," and had been honorably discharged as a sergeant. In 1992, he graduated from college at Arizona State University. From 2003-2007, he obtained three master's degrees from the Keller Graduate School of Business Management. He was currently working for a doctorate in Information Systems at Cuapella University, Redlands, California. Since 2002, he has managed Brownstone Corporation, a firm involved in information technology. He had assets of $700,000, debt of $1,200,000 (the amount owed the IRS), and so a negative net worth of $500,000. He was currently earning $8,500 per month from Brownstone Corporation.

On April 11, 2008, the district court began a sentencing hearing. After accepting Bragg's plea of guilty, the court invited him to tell the court about himself and his circumstances. Bragg stated that he had suffered from alcoholism but in late 2000 had entered a rehabilitation program and embarked on graduate education. He had started a charity providing scholarships for disabled veterans and underprivileged persons. He had been current on his taxes since 2000 and he intended to pay the full amount of tax now owed within twelve months, borrowing the money "from the companies

my dad runs." Counsel for Bragg elaborated on his rehabilitation and stated that he had a check for $302,000, ready to pay as the first installment on the tax owed.

The government had recommended a sentence of two years, three months, a sentence at the lower end of the Guidelines. The government argued in support of its recommendation. Bragg's attorney requested home confinement rather than custody. The court responded that it was inclined to place Bragg on supervised release.

On April 14, the sentencing hearing resumed. The court was informed that Bragg had now at hand $602,000 toward payment of the tax and had stipulated to pay $50,000 per month to make up the balance. The court declared that it would take the payment and the promise into consideration in framing a sentence.

The government renewed its argument for a prison sentence. The court stated that it had "reviewed the *Gall* decision and the circumstances there that the court can consider in making sentencing determinations." The court stated that it had "considered and evaluated" 18 U.S.C § 3553(a) "and the various factors there." The court added: "One thing I've learned, I suppose, and maybe it's wrong to say that in these sentencing procedures, but sending messages generally don't get much beyond the postage on the message. And that doesn't do anything for anybody. And that's just some cliche that keeps coming up about that. If that were true, given some of the tax cases that have occurred over the years, why, people would be paying in advance."

The court then noted that CHRAZ no longer existed; that the offenses were "serious;" and that payment of the $600,000 plus the promise to pay in full were remarkable. As to "just punishment," the court declared," certainly part of that is the payment." The court stated that the payment should include interest and penalties. The court said it gave particular consid-

eration to "the viability" of Bragg's "business activities," and to the fact that seven years had passed since the commission of the crime.

The court then imposed a sentence of 36 months probation, of which two years were to be served on supervised release; payment of the $1,200,000 and a special assessment of $200. The court described the sentence as "a variance." The court stated that it was not going to impose a fine.

On April 17, the court sua sponte continued the hearing by telephone. The defendant was not on the line. The court stated that it was going to modify the sentence to impose a fine. The government said that the defendant had to be present. The court stated, "I hesitate to have the defendant come back." The court accepted a waiver of his presence filed by his counsel. The court added a fine of $20,000 to the sentence.

The Amended Judgment reads as follows:

CRIMINAL MONETARY PENALTIES

SPECIAL ASSESSMENT: $200.00 FINE: $20,000. RESTI-TUTION: $1,202,660.58

This Court finds the defendant does not have the ability to pay a fine and orders the fine waived.

The defendant shall pay restitution to the Internal Revenue Service (IRS) in the amount of $1,202,660.58, **including any interest and penalties**. The defendant shall make a restitution payment of $602,660.58 today. The balance of the restitution shall be pain [sic] in increments of $50,000.00 beginning on May 1, 2008. The last payment is due on April 1, 2009.

The Court imposes a fine in the amount of $10,000.00 on each count for a total of $20,000.00 to be paid not later than ten days from this date.

The government appeals the sentence.

## ANALYSIS

Deciding this appeal, we take our cue from the sage advice of Justice Stevens speaking for the Court in *Gall v. United States*, 128 S. Ct. 586 (2007). Each case of sentencing is a unique case. *Id*. at 598. A human person is being subjected to the force of the state. The sentence cannot be calibrated mechanically by looking at a chart of possible penalties. The district court has discretion to take into consideration all the factors in the record. Our job as appellate judges is not to give the sentence we would have given but to determine whether the district judge abused the ample discretion vested in him. *Id.; see also United States v. Whitehead*, 532 F.3d 991, 993 (9th Cir. 2008). At the same time the district judge "must adequately explain the chosen sentence to allow for meaningful appellate review." *Gall*, 128 S. Ct at 597.

The district judge was "intimately familiar with the nature of the crime and the defendant's role in it" and in a "superior position" to find the relevant facts, to "judge their import," and to appraise the sincerity of those testifying at sentencing. *See Whitehead*, 532 F.3d at 993. The district judge considered the Guidelines, the 18 U.S.C. § 3553(a) factors, and the parties' arguments. He then articulated the basis for exercising his own decisionmaking authority and imposed sentence based on the facts as he saw them. *See United States v. Carty*, 520 F.3d 991, 992, 996 (9th Cir. 2008) (citations omitted); *Whitehead*, 532 F.3d at 597. Probation is not leniency. *Gall*, 128 S. Ct. at 593, 596. Therefore, the sentence should be affirmed. Q.E.D..

[1] Four things, however, are questionable in the court's explanation of the sentence. First, there is the reference to Bragg's role in managing his father's business, Brownstone Corporation, a position which pays a yearly salary of $100,000. Bragg's father — an "accredited tax advisor" —

submitted that his son's continued management of the business is vital to Brownstowne's continued viability and success. The record, in fact, is far from clear as to Bragg's indispensability in any business. He himself spoke of "the companies my Dad runs." In the absence of any financial records of the business, it is not clear that restitution would be affected by Bragg's incarceration.

Bragg relies on *United States v. Milikowsky*, 65 F.3d 4 (2d Cir. 1996). The Second Circuit held that the district court in sentencing a violator of the antitrust laws could take account of the disastrous effect the defendant's imprisonment would have on the employees of the business. The court stated:

> Before the court were unrebutted letters and testimony from family members, employees, business associates, and Milikowsky's chief trade creditor attesting to his indispensability to Jordan and Prospect, Milikowsky's two remaining businesses. This record, undisputed by the government, allowed the court to conclude that Milikowsky is the only individual with the knowledge, skill, experience, and relationships to run Jordan, the steel trading concern, on a daily basis: he is the sole buyer of all steel, the only person with the requisite ability and contacts to buy steel at competitive rates, the most successful seller, and the person who deals with Jordan's customers and suppliers. The record allowed the court to conclude, additionally, that Milikowsky's daily involvement at Jordan is necessary to ensure the continuing viability of Prospect, the steel pail company. Milikowsky is the sole buyer of all the steel Prospect uses to make pails, and, according to testimony, the cost advantage attributable to his steel-buying expertise is virtually the only reason that Prospect remains a viable operation.

On the basis of this evidence, the appellate court concluded that there was a mitigating factor not adequately taken into

account by the Guidelines, thereby permitting the district court to exercise its discretion under 18 U.S.C. § 3553(b) and, departing from the Guidelines, spare the defendant imprisonment. The appellate court noted its decision was in conflict with the result reached in several other circuits, viz. *United States v. Reilly*, 33 F.3d 1396, 1424 (3d Cir. 1994); *United States v. Sharapan*, 13 F.3d 781, 785 (3d Cir. 1994); *United States v. Rutana*, 932 F.2d 1155, 1158 (6th Cir. 1991), *cert. denied*, 502 U.S. 907, 112 S.Ct. 300, 116 L.Ed.2d 243 (1991); *United States v. Mogel*, 956 F.2d 1555, 1563-64 (11th Cir.), *cert. denied*, 506 U.S. 857, 113 S.Ct. 167, 121 L.Ed.2d 115 (1992).

**[2]** We need not on this appeal choose between the circuits. We hold only that the skimpy record before the district court was inadequate to support or explain its decision and that a record comparable to that made in *Milikowsky* may be needed. On remand, the district court may hear further evidence on this aspect of the case.

**[3]** Second, as to the seriousness of the crime, the district court observed that it was "old." It was old because of the time it took to discover and prosecute, factors not in Bragg's favor. Although it was old, it had put in jeopardy the clients who had relied on Bragg to pay the employment taxes. It was a tax fraud accomplished by breach of trust.

**[4]** Third, the judge's expression of doubt that deterrence works in tax cases ignores, without explanation, a statutory sentencing factor, "afford[ing] adequate deterrence to criminal conduct." 18 U.S.C. § 3553(a)(2)(B). The very broad discretion of district judges in sentencing post-*Booker* does not extend to ignoring sentencing factors mandated by statute. *See Gall v. United States*, 128 S. Ct. 586, 596-97 & n.6 (2007); *id.* at 607-08 & n.3 (Alito, J., dissenting); *cf. United States v. Taylor*, 487 U.S. 326, 336-37. Of course the judge had seen the cases where deterrence had not worked. He had no means of knowing how often it did work. He apparently had a hunch

that it didn't. The Sentencing Commission, however, has taken the opposite view, emphasizing that "[b]ecause of the limited number of criminal tax prosecutions relative to the estimated incidence of such violations, deterring others from violating the tax laws is a primary consideration underlying these guidelines." U.S. SENTENCING GUIDELINES MANUAL ch. 2, pt. T, introductory cmt. Congress, in enacting the law, and the Sentencing Commission, in prescribing prison for tax offenses, set out a policy. The judge in a particular case may for particular reasons decide that probation, not prison, will effectively promote the statutory goal of deterrence. He cannot shrug off the entire policy because his hunch is otherwise.

It may be that the judge's remark was meant as a by-the-way comment and did not affect his sentencing decision. Remand will provide a chance for him to explain it.

**[5]** Fourth, the court emphasized that Bragg was about to pay half the tax he owed and would pay the rest within the year. The court did not mention or calculate what the interest and civil penalties amounted to. Interest on the $1.2 million in underpayment was due for seven years. 26 U.S.C. § 6601(a). The interest was to be compounded daily. 26 U.S.C. § 6622. In addition, a mandatory penalty was to be applied in a case of tax fraud. The penalty that "shall be added to the tax" is "an amount equal to 75 percent of the portion of the underpayment which is attributable to fraud." U.S.C. § 6663(a). Here the entire tax loss of $1,200,000 was attributable to fraud. The penalty is $900,000. When this amount is added to the compound interest owed by Bragg, his promise to pay did not cover half of his obligations, and his own resources were entirely inadequate to cover what he appears to owe.

**[6]** Bragg informs us that "he is required to pay interest and penalties as assessed civilly by the IRS" and that this obligation is "required by both the plea agreement and the judgment." These liabilities arose from Bragg's tax fraud. But

Bragg's payment of them is germane to his criminal sentence. In considering whether he has done and is doing what he can do to comply with the obligations arising from his fraud, the district court should be informed as to these amounts and what Bragg has done or is doing to pay them.

What was paid at the time of sentencing showed no virtue in Bragg. He initiated payments only after he had been caught by IRS investigators, convicted, and either knew that a restitution order was about to issue or was already subject to that order. The payment of about one quarter of what was owed, if we count civil interest and penalties, was seven years late.

Payment to the government is not like making restitutions to a wronged individual. For the government as tax collector, the amount was comparatively minor. The government's interest was in assuring obedience to the law, hence the need for a message. As for "just punishment" — a factor focused on by the court — it is not "just punishment" to be made to do today what you should have done seven years ago.

Moreover, Bragg was able to pay over $1.2 million in restitution within twelve months of sentencing only because he had ready access to family funds. Allowing a district court to rely on prompt satisfaction of a substantial monetary sanction to impose a non-custodial sentence is backwards as a matter of policy, as the Eighth Circuit has noted: "If district courts were free to reduce prison sentences as the amount of tax loss rises, willful tax evaders would benefit as the amount of the government's tax loss rises, i.e., the lesson would be the more you cheat, the more lenient your sentence." *United States v. Ture*, 450 F.3d 352, 359 (8th Cir. 2006). Rewarding defendants who are able to make restitution in large lump sums also perpetuates class and wealth distinctions that have no place in criminal sentencing. *See* U.S. SENTENCING GUIDELINES MANUAL § 5H1.10 ("[Race, sex, national origin, creed, religion, and socio-economic status] are not relevant in the determination of a sentence.").

**[7]** The discretion enjoyed by the district judge does not eliminate the court of appeals from review of the sentence he has chosen. The district court had the duty to insure that the justification for its decision was "sufficiently compelling to support the degree of the variance." *Gall*, 128 S. Ct. at 597. The district court has committed procedural error. *Id*.

The parties agree that the text of the judgment is erroneous. The judgment should be reformed to indicate that a fine was not waived. The district court should so correct the record.

**[8]** The sentence imposed by the district court is VACATED and the case REMANDED for proceedings in accordance with this opinion.

---

N. RANDY SMITH, Circuit Judge, dissenting:

I respectfully dissent. The district judge adequately explained the sentence, did not consider any inappropriate factors, and did not abuse his discretion.

As our en banc decision in *United States v. Whitehead* instructs, recent Supreme Court's decisions have "empowered district courts, not appellate courts . . . [and] breathe[d] life into the authority of district court judges to engage in individualized sentencing." 532 F.3d 991, 993 (9th Cir. 2008) (en banc ) (quoting *United States v. Vonner*, 516 F.3d 382, 392 (6th Cir. 2008)). "Even if we are certain that we would have imposed a different sentence had we worn the district judge's robe, we can't reverse on that basis." *Id.* at 993 (citing *Gall v. United States*, ___ U.S. ___, 128 S. Ct. 586, 597 (2007)).

In my view, the majority opinion vacates a sentence with which it simply disagrees. Although the majority holds only that the district judge failed to adequately explain the sentence, its reasoning shows that it has failed to follow the "sage

advice" of precedent that should bind our review. It has also confused the traditional "role of an appellate court," which is not to "substitute its judgment for that of the sentencing court as to the appropriateness of a particular sentence." *Koon v. United States.*, 519 U.S. 81, 97 (9th Cir. 1996) (quoting *Williams v. United States*, 503 U.S. 193, 205 (1992) (internal citations omitted)).

## I.   The District Court Adequately Explained the Sentence.

The record sufficiently shows that the district judge considered the parties' arguments and had a reasoned basis for the sentence he imposed. Generally, "the judge must explain why he imposes a sentence outside the Guidelines." *United States v. Carty*, 520 F.3d 984, 992 (9th Cir. 2008) (citing *Rita v. United States*, 551 U.S. 338, 127 S. Ct. 2456, 2468 (2007); *Gall*, 128 S. Ct. at 594 (indicating that a district judge "must explain his conclusion that an unusually lenient or an unusually harsh sentence is appropriate in a particular case with sufficient justifications")). However, "adequate explanation in some cases may also be inferred from the PSR or the record as a whole." *Carty*, 520 F.3d at 992. Therefore, to determine whether the judge adequately explained the sentence, we must view the record as a whole.

The record confirms that the district judge explicitly stated why he gave Bragg a below the Guidelines sentence. The judge specifically referenced consideration of (1) Bragg's honorable military service; (2) Bragg's conduct since 2000 (including his community service, his clean record, his educational achievements, and his alcohol rehabilitation), (3) the fact that the crime was a one-year problem; (4) that the tax liability was for an Arizona corporation that no longer exists; and (5) and the interests of justice in not putting Bragg in prison for events that occurred many years earlier. He also expressly considered Bragg's vital role in continuing a business that employs over 700 individuals. The judge also cred-

ited Bragg's restitution payments. Additionally, the judge stated that he considered the parties' sentencing memoranda, reflected on Bragg's circumstances, and considered the § 3553(a) factors and *Gall*.

The district court is not required to "tick off each of the § 3553(a) factors to show it has considered them." *Carty*, 520 F.3d at 992. "Nor need the district court articulate in a vacuum how each § 3553(a) factor influences its determination of an appropriate sentence." *Id.* The record is sufficient, and we can be "satisf[ied] . . . that [the sentencing judge] has considered the parties' arguments and has a reasoned basis for exercising his own legal decisionmaking authority. *Rita*, 127 S. Ct. at 2468 (citing *United States v. Taylor*, 487 U.S. 326, 336-337 (1988)). Therefore, I would affirm the district court as having sufficiently explained the sentence.

## II. The District Court Did Not Consider Inadmissible Sentencing Factors.

The majority concludes that the district judge committed procedural error, because his explanation of the below-Guidelines variance included discussion of several "questionable" items. Majority Op. 13722. I disagree.

First, the opinion faults the district judge for considering evidence that Bragg had a vital role in managing Brownstone. "Significant procedural" error can include "selecting a sentence based on *clearly erroneous facts*." *Gall*, 128 S. Ct. at 597 (emphasis added). However, to the extent the district court selected a sentence on evidence of Bragg's vital importance to Brownstone, such evidence is not clearly erroneous.

Our review under the clearly erroneous standard is significantly deferential, requiring a "definite and firm conviction that a mistake has been committed." *See Easley v. Cromartie*, 532 U.S. 234, 242 (2001). If the district court's account of the evidence is plausible in light of the entire record, we may not

reverse, even if we would have weighed the evidence differently. *See Husain v. Olympic Airways*, 316 F.3d 829, 835 (9th Cir. 2002), *aff'd*, 540 U.S. 644 (2004). "Where there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous." *United States v. Elliott*, 322 F.3d 710, 714 (9th Cir. 2003); *see also Hayes v. Woodford*, 301 F.3d 1054, 1067 n.8 (9th Cir. 2002) (internal quotation omitted) ("To be clearly erroneous, a decision must strike us as more than just maybe or probably wrong; it must . . . strike us as wrong with the force of a five-week-old unrefrigerated dead fish.").

There is evidence in the record to support the district court's finding that Bragg was indispensable to his company. The majority acknowledges the letter from Bragg's father (indicating Bragg's indispensability), but then concludes that "[t]he record, in fact, is far from clear as to Bragg's indispensability in any business." Majority Op. at 13773. Bragg also testified about his role in the business, explaining that if he were incarcerated, his father may have to sell the company. This evidence was unrebutted by the Government. The majority suggests that more evidence (perhaps financial records) is needed to prove Bragg's indispensability. However, the standard for procedural error (based on erroneous facts) is not whether the record is clear as to the asserted fact, but whether the facts relied on by the district court are clearly erroneous. *See Gall*, 128 S. Ct. at 597. Even though Bragg spoke about "the companies [his] Dad runs," he also told the court about "[t]he current companies that *my dad owns* that *I'm running*." In addition to the letter from Bragg's father, Bragg's statements at sentencing and Bragg's sentencing memorandum also assert Bragg's critical importance to his company's continuing operations. Although we may question whether Bragg was truly indispensable, the district court's reliance on evidence (that Bragg ran and was indispensable to Brownstone) is not procedural error. It is not clearly erroneous, and, therefore, not an "inadmissible" or improper factor.

Second, the majority faults the district court for considering that the offense of conviction was "old." The fact that Bragg's tax crime was an isolated incident (occurring many years ago) is at least relevant and cannot be an improper factor for the district court to consider in imposing a sentence.

Third, the majority makes too much of the district judge's statements about deterrence in tax cases. Contrary to the majority's assertion, the district judge's comments do not "shrug off the entire policy [of deterrence]." Majority Op. at 13775. Rather, in the context of the sentence Bragg received, the district judge essentially expressed an opinion that a *custodial sentence* in a tax case does not necessarily serve the interest of deterrence any greater than probation, fines and restitution do. This does not mean that he discounted deterrence as a factor in selecting a sentence, but rather that deterrence can be sufficiently achieved with probation, fines, and restitution. After all, fines, restitution, and probation (with its attending conditions and consequences) may, in some cases, be "sufficient, but not greater than necessary to reflect the seriousness of the offense, promote respect for the law, and provide just punishment; to afford adequate deterrence; to protect the public; and to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment." *See Carty*, 520 F.3d at 991 (9th Cir. 2008) (citing 18 U.S.C. § 3553(a) and (a)(2)) (internal quotation marks omitted).

Depending on the circumstances, probation may be more effective at balancing the competing objectives of sentencing. Probation generally places significant restrictions on the liberty of probationers. With appropriate conditions, probation empowers the court to ensure rehabilitation, full restitution to victims, payment of fines, protection of the public, and compliance with the law. If the defendant falters or fails to comply, the violation of probation gives the judge power to mete out greater punishment, including incarceration. As the majority notes, "Probation is not leniency." Majority Op. at 13772.

It is a "substantial restriction of freedom" that "can have a significant impact on both th[e] person and society." *Gall*, 128 S. Ct. at 593-94, 596 & n.4 (citations omitted). Not only can probation be sufficient punishment in some cases, but "§ 3553(a)(3) directs the judge to consider sentences other than imprisonment." *See Gall*, 128 S. Ct. at 602. To the extent that the district judge expressed a doubtful opinion on the efficacy of custodial sentences in deterring tax crimes, such an expression does not mean he completely disregarded the interest of deterrence and does not amount to reversible error. The record is sufficiently clear, and there is simply no need to remand this case for the district judge to explain his expressions on deterrence in tax cases.

Fourth, the majority faults the district judge for considering Bragg's payment of restitution as a reason for imposing a non-custodial sentence. Yet, § 3553(a)(7) expressly directs the district court to consider "the need to provide restitution to any victims of the offense." Therefore, the district judge's consideration of restitution cannot be procedural error.

The majority also appears to conclude that the district court should not have considered Bragg's restitution payment, because it was insignificant in light of the possible civil penalties the IRS might impose under the Internal Revenue Code. I do not challenge the majority's computation of the potential civil penalties Bragg may be required to pay. But the possibility or even probability that the IRS can or will impose future civil penalties should not weigh in our analysis. Our review should turn only on whether the district court violated the law in considering restitution as a factor, when imposing the sentence, not on our own assessment of whether Bragg's restitution was significant enough in comparison to the total civil penalties the IRS could impose.

The majority also reweighs the restitutionary interest against the government's interest in "assuring obedience to the law." Majority Op. at 13776. It also concludes that

Bragg's restitution payment was not "just punishment." Majority Op. at 13776. The majority discounts that Bragg was also placed on probation and ordered to pay a fine in addition to the criminal restitution. More importantly, however, the majority forgets our role as an appellate court. While we may disagree with the sentence, "it is not for [us] to decide *de novo* whether the justification for a variance is sufficient or the sentence reasonable. On abuse-of-discretion review, [we] should [give] due deference to the District Court's reasoned and reasonable decision that the § 3553(a) factors, on the whole, justif[y] the sentence." *Gall*, 128 S. Ct. at 602.

Although the parties agree that the judgment erroneously states that the district court waived any fine, this error is purely clerical and harmless. The record is clear that the district court ordered Bragg to pay a $20,000 fine, which Bragg has already paid and which he does not challenge. I see no reason to remand the judgement for reformation of an unchallenged clerical error.